(769 P.2d 34)

No. 62,576

STATE OF KANSAS, *Appellant*, v. JESSE WEBB, *Appellee.*

Opinion filed February 17, 1989.

*Linda S. Trigg*, county attorney, and *Robert T. Stephan*, attorney general, for the appellant.

*Grover L. Bryan*, of Liberal, for the appellee.

Before ABBOTT, C.J., BRISCOE, J., and R. DAVID LAMAR, District Judge, assigned.

BRISCOE, J.: This is an interlocutory appeal brought by the State pursuant to K.S.A. 22-3603 challenging the district court's order suppressing evidence which fell from defendant's person as well as evidence that was found on defendant's person and in the car in which defendant was a passenger.

The Liberal Police Department had received a teletype from the Sedgwick County Sheriff's Office requesting its assistance in apprehending a described individual who was wanted on a felony warrant. The fugitive was a suspect in the killing of a deputy sheriff in Wichita and was described as armed and dangerous. The teletype also stated that the fugitive would be accompanied by two other black males who were also described as armed and dangerous.

A confidential informant contacted the Liberal Police Department and stated that he had seen the fugitive in a specific car. The described car, with three black males in it, was located in Liberal during daylight hours and stopped. After the stop, the officers positioned themselves away from the car with their weapons drawn. The occupants of the car were ordered to keep their hands up. All three were ordered out of the car when they ignored the officers' orders by continuing to move their hands out of the officers' view. When defendant got out of the car, he dropped a pill bottle containing a "rock-like" substance the officers believed to be cocaine. Defendant was then arrested and patted down for weapons. The car was also subsequently searched. A razor blade and a marijuana cigarette were found in the car. A metal spoon, a small bottle containing white powder, and a plastic bag containing marijuana were found in defendant's pocket. Defendant was charged with one count of possession of cocaine and one count of possession of marijuana. Defendant filed a motion to suppress the physical evidence which fell from defendant's person, as well as the physical evidence found on defendant's person and in the car, specifically: the pill bottle containing the rock-like substance, the small bottle containing white powder, and the marijuana. Defendant contended the officers' ordering defendant to get out of the car and the subsequent search of defendant and the car violated his Fourth Amendment rights.

The district court ruled the stop of the car was lawful, but then held the subsequent "search" was unlawful. Specifically, the court held the officers exceeded the lawful scope of a search following a stop by ordering defendant to get out of the car. In support of this conclusion, the court found that the scope of the search was limited by the purpose of the stop. As the officers had stopped the car to apprehend a fugitive, the court found that,

once the officers determined or reasonably could have determined that the fugitive was not in the car, their authority to further detain and search ended.

The State contends the court erred in suppressing evidence found after defendant was asked to get out of the car. The State argues the officers' concern for their own safety justified their asking defendant to get out of the car. We agree.

In *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), the United States Supreme Court recognized a limited exception to the probable cause and warrant requirements of the Fourth Amendment. Kansas courts have adopted the exception (*State v. Baker*, 239 Kan. 403, 720 P.2d 1112 [1986]) and the Kansas legislature has codified it (K.S.A. 22-2402). Under the exception, an officer may stop and frisk an individual if the officer has a reasonable and articulable suspicion, based on an objective view of facts previously known to him, or made known to him through observation, that the person stopped is committing, has committed, or is about to commit a crime. *State v. Epperson*, 237 Kan. 707, 711-12, 703 P.2d 761 (1985). Furthermore, under the rules set out in *Terry*, K.S.A. 22-2402(2), and Kansas case law, when an officer has made a valid *Terry* stop, he may search a person for firearms or other dangerous weapons if he reasonably suspects that his personal safety or that of others nearby requires it. The only justification of a *Terry* search is the protection of police officers and others nearby. The preservation of evidence is not one of the purposes of such a search. *Epperson*, 237 Kan. at 715.

In this case, the police had a reasonable and articulable suspicion upon which to base a belief that one of the occupants of the car was an armed and dangerous felon. In addition, the police testified the suspects were moving their hands up and down, ignoring instructions to keep their hands up. The officers' concern for their personal safety was reasonable under these circumstances. Therefore, a *Terry* search for dangerous weapons was authorized. The sole issue before this court is whether the police had the right to order defendant to get out of the car in order to accomplish that search.

We find *Pennsylvania v. Mimms*, 434 U.S. 106, 54 L. Ed. 2d 331, 98 S. Ct. 330 (1977), to be controlling. In *Mimms*, the police stopped the defendant's car for operating with an expired license

plate. The police asked defendant to step out of the car and produce his license. As defendant got out of the car, the police noticed a large bulge under his jacket. The police frisked defendant and discovered a loaded revolver. The defendant was then arrested. The defendant filed a motion to suppress the revolver as being the fruit of an illegal search. The trial court denied the motion and convicted defendant, who appealed his conviction. The Pennsylvania Supreme Court reversed the conviction, holding the search violated the Fourth Amendment "because the officer's order to respondent to get out of the car was an impermissible 'seizure.' " *Mimms*, 434 U.S. at 107-08.

The United States Supreme Court disagreed with this conclusion and held the order to get out of the car was reasonable and permissible under the Fourth Amendment. The Court attempted to balance two interests. The first was the officer's interest in personal safety and the second was the intrusion into the driver's personal liberty occasioned by the order to get out of the car. The court found the first interest to be "both legitimate and weighty." *Mimms*, 434 U.S. at 110. The court recognized the risks facing an officer who approaches a person seated in a car and the hazards of accidental injury from passing traffic if the officer is standing exposed. As to the other interest, the court found the additional intrusion of asking the driver to get out of the car to be "de minimis." The court concluded: "What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety." *Mimms*, 434 U.S. at 111.

In this case, the justification for the stop is much stronger than the *Mimms* situation. In *Mimms*, the police were making a simple traffic stop. In this case, the police had a reasonable and articulable suspicion upon which to base a belief that they were dealing with an armed and dangerous criminal. Defendant's behavior of moving his arms exacerbated the officers' fears.

The district court relied upon this court's ruling in *State v. Stitzel*, 2 Kan. App. 2d 86, 575 P.2d 571 (1978), which is readily distinguishable from the present case. In *Stitzel*, the appellant was a passenger in a car stopped for a traffic violation. The driver got out of the car and walked back toward the patrol car. The officer met the driver between the two cars and, during a discussion, the officer smelled alcohol on the driver's breath and asked the driver if he had any beer in the car. The driver then

consented to a search of his car. The officer saw the appellant sitting in the car bent over with his legs close together, apparently covering something. The officer asked appellant to get out of the car and appellant did so. After searching the car, the officer noticed appellant was holding his arms tightly against his body. The officer asked appellant what he had under his coat and the appellant replied, "Nothing." The officer then asked appellant to take his arms away from his body. As appellant did so, two bags of marijuana fell out, and appellant was arrested. This court found the marijuana was the product of an illegal search. The court found that K.S.A. 22-2402 was inapplicable to the case because the "officer's casual treatment of both occupants of the car was wholly inconsistent with any fear on his part." *Stitzel,* 2 Kan. App. 2d at 88. The case does not stand for the proposition that the police may not order a person to get out of a car that has been lawfully stopped. In contrast to *Stitzel,* the police in this case had genuine fear and did not treat the stop as casual.

Defendant argues that, once the police determined he was not the sought-after fugitive, the justification for the stop disappeared and the order to get out of the car was an infringement on his personal liberty. He points out that the police had a picture of the fugitive and should have been able to ascertain that he was not the fugitive. Officer Hickman testified that approximately two to three minutes elapsed from the time the car was stopped until defendant was handcuffed. Officer Ralston testified that he had no idea if defendant was the fugitive when he ordered him out of the car. In view of this testimony, it cannot be said that the police did know or should have known that defendant was not the fugitive. Considering the fact that the police thought they were dealing with an armed, dangerous felon, it was not unreasonable for the police to order defendant out of the car as a precaution to insure that defendant would not harm the officers.

The appeal is sustained and the case is remanded to the district court for further proceedings.