(803 P.2d 587)

No. 64,585

STATE OF KANSAS, *Appellee*, v. GARY DON BURKS, *Appellant*.

Opinion filed December 28, 1990.

*Reid T. Nelson*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for the appellant.

*Brad L. Jones*, county attorney, and *Robert T. Stephan*, attorney general, for the appellee.

Before BRISCOE, C.J., RULON, J., and PAUL E. MILLER, District Judge, assigned.

MILLER, J.: This is an appeal from the trial court's denial of defendant's motion to suppress. The only issue is whether the trial court erred in doing so. As is often true in search and seizure cases, the facts of this case are crucial to the resolution of the issue and will be stated in some detail.

On the morning of April 21, 1989, Troopers Michael Nicholson and W.D. Mayfield of the Kansas Highway Patrol were on routine patrol on U.S. Highway 75 in Coffey County. While traveling northbound, Trooper Nicholson, who was driving, clocked a speeding southbound vehicle on radar, and the speeding car was stopped. In addition to the driver, who was cleanshaven and had short hair, the car also contained defendant Gary Don Burks, who was unshaven and had long hair and a mustache. Defendant was wearing what Trooper Mayfield described as a "gooney look-ing hat," a heavy coat, and a heavy sweater. According to the testimony of both troopers, he did not fit the "profile" for the situation because of his appearance as contrasted to that of the driver.

Trooper Mayfield testified that his usual procedure when riding as the passenger in the patrol car was to monitor radio traffic from inside the car while the trooper who was driving made contact with the driver of the stopped car. However, on this occasion, because of the suspicious nature of defendant's appearance in the vehicle, Trooper Mayfield got out of the patrol car and stood at the car's right front fender.

Trooper Nicholson made contact with the driver, advised him of the purpose of the stop, and learned that defendant was a hitchhiker who had been picked up shortly before the stop. Upon learning this, Trooper Nicholson made a hand gesture toward the passenger side of the car. Trooper Mayfield assumed the gesture meant something was amiss with the passenger and he approached the passenger's door as defendant was in the process of rolling down the window. Defendant handed Trooper Mayfield his driver's license, which Mayfield put in his pocket without examination. Mayfield then told defendant to get out of the car and, taking him by the arm, directed defendant to the rear of the car and told him to place his hands on the trunk so that Mayfield could pat him down. Up to this point, defendant had said nothing to either trooper and he had made no threatening gestures. According to Trooper Nicholson, prior to handing his license to Mayfield, defendant had done nothing except sit quietly in the car with his hands resting on top of a duffel bag in his lap. The duffel bag was described by Mayfield as closed with no suspicious bulges. While in the car, defendant had no noticeable suspicious bulges upon his person.

As a result of the pat-down, a knife and a gun were found concealed on defendant's person. He was arrested and transported to the county jail where he was booked for carrying a concealed weapon. An inventory search was conducted and marijuana and drug paraphernalia were found in defendant's duffel bag.

Defendant was charged with and convicted of an aggravated weapons violation (K.S.A. 21-4202), unlawful possession of a firearm (K.S.A. 21-4204[1][b]), felony possession of marijuana (K.S.A. 1989 Supp. 65-4127b[a][3]), and possession of drug paraphernalia (K.S.A. 1989 Supp. 65-4153[a][2]). He contends all of the evidence was illegally seized because Trooper Mayfield had no legal basis to conduct the initial pat-down. It should be noted that

hitchhiking was not illegal on the portion of Highway 75 where defendant was picked up.

The parties have dissected the issue stated into several sub-issues: (1) Whether the "stop and frisk" of defendant was justified pursuant to K.S.A. 22-2402; (2) whether the search of defendant's duffel bag could be justified as incident to defendant's arrest for the weapons violation; and (3) whether the initial pat-down search of defendant could be justified as incident to the "arrest" of the driver of the car. Suffice it to say that all of the issues have as their genesis the removal of defendant from the car and the pat-down search of him, and the admission of the evidence must stand or fall upon the propriety of the troopers' actions.

Defendant argues his removal from the car violated the stop and frisk statute, K.S.A. 22-2402, and, thus, the Fourth Amendment to the United States Constitution. He argues the troopers, and specifically Trooper Mayfield, did not have sufficient objective facts on which to base a reasonable, articulable suspicion that he had been, was, or was about to be involved in criminal activity, allowing them to remove him from the car. The State emphasizes that Trooper Mayfield removed defendant from the vehicle to insure both troopers' safety, a permissible purpose under the Fourth Amendment and 22-2402, and that the reasonable, articulable suspicion required by the statute arose from the fact that the car was speeding. The State argues that defendant's appearance, dress, position in relation to his duffel bag, and hitchhiking activity all combined to form a reasonable basis from which the troopers could form the belief that their safety was in jeopardy, thus justifying removal of defendant from the car. The trial court stated defendant's dress and duffel bag gave the troopers a reasonable belief that a search of his person was necessary for their safety.

In *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 54 L. Ed. 2d 331, 98 S. Ct. 330 (1977), the Court held that the removal of the driver from a car on a routine traffic stop does not violate the Fourth Amendment. In that case, two officers, while on routine patrol, stopped Mimms for driving a car with an expired license plate. One officer asked Mimms to get out of the car and show his car registration and driver's license. As Mimms got out of the car, the officer noticed a bulge underneath Mimms' jacket.

The officer frisked Mimms and discovered a gun, and Mimms was arrested. Mimms moved to suppress the gun. In upholding the denial of the motion, the Court held the removal of Mimms from his car did not violate the prohibition of unreasonable seizure, balancing the interest of the officers with that of the driver. The officers' interest in self-protection from unseen actions by a driver, even during a routine traffic stop, despite the lack of particularized suspicion about possible dangerous circumstances, is "legitimate and weighty." 434 U.S. at 110. The driver's interest in preventing such a brief intrusion into privacy is, by comparison, "de minimis." 434 U.S. at 111. In reaching its holding, the Court did note that the state did not go so far as to argue it is permissible to "frisk the occupants of any car stopped for a traffic violation. Rather, it only argues that it is permissible to order the driver out of the car." 434 U.S. at 110 n.5.

In *United States v. Hardnett*, 804 F.2d 353, 358 (6th Cir. 1986), the court relied on *Mimms* in ruling that officers could order passengers as well as the driver out of the car during an investigative stop. The officers in that case, however, had received a report that a group of men riding in a car matching the description of the one stopped were armed and dangerous. The court reasoned that, if removal of the driver without a particularized suspicion that the driver is armed is allowable, removal of a passenger where there is a particularized suspicion that the passenger is armed is certainly allowable. 804 F.2d at 358. *Cf. United States v. Taylor*, 857 F.2d 210, 214 (4th Cir. 1988) (where officers knew that two of the three occupants of a car had records of narcotics and handgun violations, removing the occupants was a "valid precautionary measure").

This court also relied on *Mimms* to find that removing an occupant from a car did not violate the Fourth Amendment. *State v. Webb*, 13 Kan. App. 2d 300, 769 P.2d 34 (1989). In *Webb*, the Liberal Police Department received a request from the Sedgwick County Sheriff's Department for assistance in apprehending a described individual wanted on a felony warrant. The individual was described as armed and dangerous and it was reported he would be accompanied by two other black males, also armed and dangerous. Acting on information from a confidential informant that the three men were in a specific car, the police stopped the

car and ordered its three occupants out of the car. Although defendant, an occupant of the car, was not the sought-after felon, he was arrested because a search of his person and the car revealed drugs and drug paraphernalia. Defendant argued his removal from the car violated the Fourth Amendment. Disagreeing, this court found *Mimms* controlling, reasoning that, if *Mimms* allows the driver to be removed on a routine traffic stop, it certainly allowed defendant to be removed when there was a reasonable and articulable suspicion, based on the reports the officers had received, that he was armed and dangerous. 13 Kan. App. 2d at 303.

When one contrasts the knowledge of the officers in the cases cited above with that of the troopers in the present case, Trooper Mayfield did not have a sound basis for removing defendant from the car. Neither trooper had received a report of any crime or descriptions of criminal suspects who may have been in the area. Both troopers testified that defendant "didn't fit" the car and its driver based upon his appearance and the fact that he had been hitchhiking. Although the troopers professed concern for their safety, they never removed the driver from the vehicle, which is permissible under *Mimms*. It is clear the troopers did not focus on or consider the driver to determine whether he was a possible threat to their safety, but directed almost all of their attention to defendant.

In denying a motion to reconsider its earlier denial of a motion to suppress, the trial court stated the search of defendant was reasonable as a search pursuant to the lawful arrest of the driver. K.S.A. 22-2501. The trial court did not discuss the stop and frisk statute as possible justification for the search of defendant.

K.S.A. 22-2402 reads as follows:

"(1) Without making an arrest, a law enforcement officer may stop any person in a public place whom he reasonably suspects is committing, has committed or is about to commit a crime and may demand of him his name, address and an explanation of his actions.

"(2) When a law enforcement officer has stopped a person for questioning pursuant to this section and reasonably suspects that his personal safety requires it, he may search such person for firearms or other dangerous weapons. If the law enforcement officer finds a firearm or weapon, or other thing, the possession of which may be a crime or evidence of crime, he

may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person."

This statute is patterned after the test enunciated in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). There, the Court held "a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime" does not violate the Fourth Amendment prohibition of unreasonable searches and seizures. 392 U.S. at 27. The officer must have a reasonable conclusion "that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous." If the officer possesses this conclusion, he may conduct "reasonable inquiries." If these inquiries do not dispel the reasonable fear for the safety of himself or others, a carefully limited search of the outer clothing is permissible to discover weapons. 392 U.S. at 30.

Interpreting 22-2402, the Kansas Supreme Court has stated:

"In the light of what as been said in the foregoing cases mentioned and discussed herein, we believe that the 'stop' authorized by 22-2402 requires that a law enforcement officer must have prior knowledge of facts or observe conduct of a person which causes the officer to reasonably suspect that such person is committing, has committed, or is about to commit a crime. Further, in order to justify the search for weapons authorized under the provisions of subsection (2) of 22-2402, the officer must have prior knowledge of facts or observe conduct of the person or receive responses to the limited interrogation authorized by subsection (1) which, in the light of his experience, would cause the officer to reasonably suspect that his personal safety requires such search." *State v. Jackson*, 213 Kan. 219, 225, 515 P.2d 1108 (1973).

See *State v. Potter*, 246 Kan. 119, 122-23, 785 P.2d 989 (1990).

While the State argues the speeding car gave the troopers reasonable suspicion under 22-2402(1) to stop the car, defendant's challenge is not to the authority to stop and detain the car for the speeding violation. Instead, he is challenging the authority of the troopers to frisk his person after the car in which he was riding was stopped for speeding. The pat-down search of defendant was separate and distinct from the stop of the vehicle for speeding. Therefore, pursuant to the statute, the troopers must have had reasonable suspicion to search defendant.

On several occasions, the Kansas Supreme Court has considered what grounds give rise to the reasonable suspicion of criminal activity required by 22-2402 and *Terry* for a valid stop and frisk. In *Jackson*, defendant was walking along a highway at 2:50 in the morning when an officer stopped and frisked him. In affirming suppression of incriminating evidence found on defendant, the court noted the officer, following the "common practice" of the department, stopped defendant merely because he was walking along the highway at a very early hour. The court stated that, while under *Terry* "the stop of a suspicious person may be reasonable if coupled with some facts known to the officer," the officer did not possess any such facts. 213 Kan. at 224. Instead, the officer stopped defendant only "because of custom," and the questioning of defendant immediately prior to the frisk did not uncover grounds for reasonably believing he was armed and dangerous. 213 Kan. at 224-25.

In *State v. Epperson*, 237 Kan. 707, 703 P.2d 761 (1985), an officer was on routine patrol in a neighborhood where many burglaries had occurred. He saw a black BMW, legally parked, with two men inside, one of whom bent forward and then straightened at the sight of the police car. Both men appeared startled, left the car, and began walking down the street. The officer stopped the men and, receiving no satisfactory answer from questioning, searched the car and found an axe and two baggies of cocaine. In affirming suppression of this evidence, the Kansas Supreme Court found the officer had seized the two men when he stopped them for questioning. Under 22-2402 and *Terry*, the court stated this action required "a reasonable and articulable suspicion, based on fact, that the person stopped has committed, is committing, or is about to commit a crime." 237 Kan. at 712. The requisite reasonable suspicion of criminal activity was missing from this fact pattern. See *State v. Guy*, 242 Kan. 840, 843, 752 P.2d 119 (1988).

The court recently considered the propriety of checking the identification of passengers in a car stopped for a traffic violation in *State v. Damm*, 246 Kan. 220, 787 P.2d 1185 (1990). A car driven by Damm was stopped for defective taillights. The officer requested identification from Damm and his two passengers and ran record checks on all three. There was an outstanding warrant

on one of the passengers and the officer arrested him. The officer then searched the car, following "department policy," and discovered drug paraphernalia and cocaine. The court found that, while the initial stop for defective taillights was valid, it exceeded its necessary scope and duration when the passengers' identities were checked. The court found the officer could not have had a reasonable suspicion that there were outstanding warrants on either of the passengers, had not received any reports of crimes committed, and had seen nothing in the car suggesting criminal activity. The court concluded the officer had no reasonable justification for checking the passengers' identities and affirmed suppression of the drug paraphernalia and cocaine.

Existence of a reasonable, articulable suspicion of criminal activity depends on facts unique to the case, such as "location, time of day, previous reports of crime in the area, and furtive actions of suspects." *State v. Kirby*, 12 Kan. App. 2d 346, 353, 744 P.2d 146 (1987), *aff'd* 242 Kan. 803, 751 P.2d 1041 (1988). A comparison of the surrounding circumstances and of the troopers' knowledge in the present case with that noted in the cases discussed supports the finding of lack of reasonable suspicion that defendant was involved in criminal activity or that he was armed and dangerous.

Further, Trooper Mayfield frisked defendant after he learned he was a hitchhiker because, according to his testimony, it was his standard procedure to question and pat down all hitchhikers. As in *Jackson*, it is clear this custom was the prime motivation for the frisk, not any suspicious behavior by defendant. Defendant did not appear to be armed, as noted in *Epperson*. The troopers testified neither defendant's clothing nor his duffel bag bulged as if they concealed weapons. Finally, as considered in *Epperson* and *Damm*, the troopers had not received any reports of crimes committed in the area and did not have knowledge of any crimes committed by defendant. Nor did the troopers testify they thought the driver of the car was in trouble or in danger with defendant in his car.

In *State v. Potter*, 246 Kan. 119, 785 P.2d 989 (1990), a deputy received a radio report of an early morning convenience store robbery. The perpetrators were reported to have been wearing camouflage suits and black greasepaint on their faces. About two

hours after receiving the report, the deputy was patrolling a neighborhood that had experienced several car thefts and vandalism when he noticed a car drive through the parking lots of a Kwik Shop and a small shopping center several times. The deputy thought the car's occupants were either lost or involved in a crime. When he pulled up behind the car, he noticed it did not have a license plate. The rear window was fogged so he could not determine whether the car had a valid temporary permit. He stopped the car and did see a permit in the rear window as he was walking toward it. He also saw a passenger in the rear seat who was wearing a camouflage suit and black greasepaint on his face. When the deputy saw the front-seat passenger was dressed the same way, he drew his revolver and ordered all occupants out of the car. On appeal, the front-seat passenger argued the deputy lacked reasonable suspicion to make the stop. In rejecting this contention, the court stated the observed behavior was more suspicious than the behavior observed in either *Jackson* or *Epperson*. The deputy also had reason to believe the car was not licensed when he stopped it.

By way of contrast, defendant here made no gesture or movement when approached, except to hand his driver's license to the trooper. He was hitchhiking early on a late April morning and was wearing a heavy sweater and coat. There was no report of any crime. Defendant did nothing to raise any suspicion of criminal activity or of being armed—he was searched for being a hitchhiker, dressed in a manner different from the driver, and holding a duffel bag on his lap. Because this behavior is not sufficient in light of precedent to establish either a reasonable suspicion that defendant was involved in criminal activity or that the troopers' safety was endangered, the pat-down search of his person violated 22-2402 and the Fourth Amendment. The knife and gun discovered during the pat-down must be suppressed, as must the drug paraphernalia and marijuana discovered subsequent to defendant's arrest for possession of the weapons. *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963).

All other variations of the issue before this court have been considered and found to be without merit.

Reversed and remanded for new trial.