(933 P.2d 762)
No. 74,968

STATE OF KANSAS, *Appellee*, v. ALBERT SCHMITTER, *Appellant*.

Opinion filed February 28, 1997.

*Dan Trantham*, student intern, *Jean K. Gilles Phillips*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Tony W. Rues*, assistant district attorney, *Joan M. Hamilton*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before ELLIOTT, P.J., KNUDSON, J., and WAHL, S.J.

WAHL, J.: Albert Schmitter appeals his conviction of one count of possession of cocaine in violation of K.S.A. 1994 Supp. 65-4160. He argues the court erred in denying his motion to suppress the evidence obtained during an allegedly illegal search.

The parties stipulated to the facts of this case in the district court and, thus, the facts on appeal are not controverted.

On October 8, 1994, two Topeka police officers assigned to the Street Crimes Action Team observed a car make a turn without using a turn signal. As their spotlight shone on the subject car, the officers could see that neither of the front shoulder straps were buckled around the front seat occupants.

One of the officers approached the passenger side of the car and asked the front seat passenger, Schmitter, for identification. Schmitter handed the officer a billfold and said he did not have any identification. He then told the officer his name. The officer next ordered Schmitter out of the car and had him spread eagle on the hood of the car. The officer then patted Schmitter down in an attempt to find some form of identification. The officer testified that he was not concerned with his safety when he conducted the

pat-down. When the officer did not find any type of identification or another billfold, he asked Schmitter if he could search the inside of his pockets for identification. Schmitter consented. The officer found a small rock of what he believed to be crack cocaine in one of Schmitter's pockets. There is no testimony about when Schmitter was placed under arrest.

Prior to trial, Schmitter filed a motion to suppress. The court denied the motion, finding the search was consensual. Schmitter then agreed to waive a jury trial and submit his case to the judge based upon stipulated evidence but reserved his right to appeal the issue of the illegal search. Schmitter was subsequently found guilty of possession of an opiate or narcotic drug and sentenced to 28 months in prison. The charges for possession of drug paraphernalia and failure to wear a seat belt were dismissed without prejudice.

Because the instant case was decided on stipulated facts, this court exercises de novo review. *State v. Mendoza*, 20 Kan. App. 2d 541, 542, 889 P.2d 1147, *rev. denied* 257 Kan. 1095 (1995).

Schmitter's first argument is that because the officer never feared for his safety, he was not legally permitted to perform the pat-down search. The State counters that because the officer observed that Schmitter did not have on his seat belt and because the officer could have reasonably believed that Schmitter was lying when he claimed to have no identification, the officer was permitted to pat Schmitter down under *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). See K.S.A. 22-2402; *State v. Epperson*, 237 Kan. 707, 703 P.2d 761 (1985). At the hearing on the motion to suppress, the State conceded that *Terry* did not apply to this situation.

The State cites no authority for its position on appeal that the *Terry* doctrine allows such a search, and such an argument is patently specious. Federal courts have found that the usual traffic stop is more like an investigatory detention than a custodial arrest and thus, is more analogous to a *"Terry* stop" than a formal arrest. *U.S. v. Walker*, 933 F.2d 812, 815 (10th Cir. 1991). This court has recognized that there are two prongs to the analysis under *Terry*: (1) whether the officer's action in stopping the individual was justified at its inception, and (2) whether the search was reasonably related

in scope to the circumstances justifying the initial stop. *State v. Kirby*, 12 Kan. App. 2d 346, 352, 744 P.2d 146 (1987), *aff'd* 242 Kan. 803, 751 P.2d 1041 (1988). However:

"In order to justify a 'stop and frisk' search under *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), and K.S.A. 22-2402, *a police officer must reasonably believe that his or her personal safety is at risk.*" (Emphasis added.)

"The sole justification for a *Terry* search is the protection of the police officer and it must, therefore, be confined in scope to an intrusion reasonably designed to discover the possible existence of concealed objects which might be used for an assault against the police officer. The preservation of evidence is not a permissible purpose." *State v. Waddell*, 14 Kan. App. 2d 129, Syl. ¶¶ 1, 2, 784 P.2d 381 (1989).

Schmitter concedes that the initial stop was permissible based on an observed violation of the seat belt law and that the officer was legally permitted to ask for identification to issue a citation or a warning. Schmitter argues, however, that requiring him to get out of the car and spread eagle at the hood of the car, and patting him down, was a violation of his right to be free from unreasonable searches and seizures. We agree.

The officer testified he was never concerned with his or his partner's safety and was merely searching for identification. This is clearly not permitted by *Terry*. However, because nothing was found during this initial search, it does not, by itself, require suppression.

Schmitter next argues that the continued detention and subsequent search of his pockets were not reasonably related in scope to the circumstances of the stop and, therefore, both the initial patdown and the subsequent search were unreasonable.

"An individual is 'seized' when an officer restrains his freedom, even if the detention is brief and falls short of arrest. The Fourth and Fourteenth Amendments prohibit unreasonable seizures as well as searches. *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 45 L. Ed. 2d 607, 95 S. Ct. 2574 (1975); *State v. Epperson*, 237 Kan. 707, 712, 703 P.2d 761 (1985). The scope and duration of a seizure must be strictly tied to and justified by the circumstances which rendered its initiation proper." *State v. Damm*, 246 Kan. 220, 224, 787 P.2d 1185 (1990).

A traffic stop is a seizure within the meaning of the Fourth Amendment. *State v. McKeown*, 249 Kan. 506, 510, 819 P.2d 644 (1991).

" ' "[T]he brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion." ' *United States v. Sharpe*, 470 U.S. 675, 685, 84 L. Ed. 2d 605, 105 S. Ct. 1568 (1985) (quoting *United States v. Place*, 462 U.S. 696, 709, 77 L. Ed. 2d 110, 103 S. Ct. 2637 [1983])." *State v. Kirby*, 12 Kan. App. 2d at 355.

Our courts have consistently held that an officer who observes a traffic violation has the right to stop the offending vehicle and briefly detain its occupants for the purpose of enforcing the traffic laws of this state. *State v. Guy*, 242 Kan. 840, 843, 752 P.2d 119 (1988). This court has also recognized that police officers may remove the driver from a car during a routine traffic stop. *State v. Burks*, 15 Kan. App. 2d 87, 89-90, 803 P.2d 587 (1990), *rev. denied* 248 Kan. 997 (1991) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 54 L. Ed. 2d 331, 98 S. Ct. 330 [1977]). Also, this court has found that removal of an occupant from a car did not violate the Fourth Amendment where there was a reasonable and articulable suspicion that the occupant was armed and dangerous. *State v. Webb*, 13 Kan. App. 2d 300, 303, 769 P.2d 34 (1989). Both *Burks* and *Webb* rely on the rationale in *Mimms* which utilized a balancing test where the interests of the officer's safety were compared with the intrusion into the driver's personal liberty occasioned by the order to get out of the car.

In *Webb*, the police had a reasonable articulable suspicion that the occupants were armed and dangerous criminals based upon reports received from police in another county. Also, the officers observed the defendant's behavior of moving his hands even though he was ordered to keep his hands up. Thus, the court found the police were justified in removing the passengers from the car under *Mimms. State v. Webb*, 13 Kan. App. 2d at 301-03.

In *Burks*, state highway patrol troopers stopped a vehicle for speeding. Noticing that the driver was clean shaven and had short hair but the passenger had a beard, long hair, and wore a "gooney looking hat," one trooper ordered the passenger out of the car. He then ordered him to place his hands on the trunk of the car and proceeded to pat him down. Up until this point, the passenger had made no statements and there was nothing about him to put the

trooper in fear of his safety. As a result of the pat-down, the trooper discovered a gun and a knife. The passenger was then arrested, and an inventory search of his bag revealed marijuana and drug paraphernalia. In *Burks*, this court suppressed the evidence as fruit of the poisonous tree because absent a reasonable suspicion that the passenger had or was in the process of committing a crime, or a legitimate concern that the trooper's safety was in jeopardy, the trooper did not have a sound basis for removing him from the car and the pat-down search violated K.S.A. 22-2402 and the Fourth Amendment. 15 Kan. App. 2d at 91, 95.

The question here is, when an officer notices that the front seat passenger does not have his or her seat belt fastened, does this justify the removal and search of the person under *Mimms*? Once Schmitter complied with the officer's request; gave the officer his correct name; showed the officer his billfold, tending to confirm that he did not have any identification; and got out of the vehicle, absent a showing that the officer feared for his safety or had a reasonable and articulable suspicion that Schmitter had or was committing a further crime, the reasonable duration of the stop was at an end. The only reason for either the initial pat-down or the subsequent search was to find identification. The officer's only reason for insisting on identification was his assertion that sometimes people lie about their identity to escape from outstanding warrants.

In *U.S. v. Guzman*, 864 F.2d 1512 (10th Cir. 1988), *overruled on other grounds U.S. v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995), the court found that while conducting a routine traffic stop, an officer may request the driver's license and vehicle registration, run a computer check, and issue a citation. Once the driver has complied and produced his or her license and registration, if no information is obtained in the computer check, he or she must be allowed to go without further delay. In order to justify a further detention for questioning on matters not related to the original stop, the officer must have reasonable suspicion that the individual has committed or is committing some other crime. 864 F.2d at 1519.

In *Guzman*, the court noted that at the time of the stop, there was no objective evidence that the driver or the passenger had committed any more serious crime than the failure to wear their seat belts. After the officer checked Guzman's license, his authority to detain Guzman further was limited to issuing a warning or a citation. 864 F.2d at 1519. The Government apparently countered that because the traffic stop took less than 15 minutes, it was not unreasonable. The court noted that although the stop was of a short duration, the circumstances surrounding the stop, rather than any arbitrary time limit, governed the stop's permissible length. Under the facts presented, the stop unreasonably extended beyond the length necessary for its only legitimate purpose—the issuance of a warning or a citation for a seat belt violation. 864 F.2d at 1519 n.8; accord *U.S. v. Walker*, 933 F.2d at 815.

The record shows that at the preliminary hearing and the hearing on the motion to suppress, the only reason the officer continued to detain and searched Schmitter was that the officer wanted proof of identification. There was no testimony that the officer had any indication that Schmitter had committed any crime other than riding in a car without a seat belt on. Therefore, the further detention was unreasonable under the Fourth Amendment.

The State argues that this was a constitutionally justified search under the search incident to arrest exception for warrantless searches. It claims that an officer has the discretion to arrest a passenger for violating K.S.A. 8-2503 and, thus, the search was legal even though Schmitter was not placed under arrest for violating the seat belt law.

K.S.A. 8-2503 reads in relevant part:

"(a) Except as provided in K.S.A. 8-1344 and 8-1345, and amendments thereto, and in subsection (b), each front seat occupant of a passenger car manufactured with safety belts in compliance with federal motor vehicle standard no. 208 shall have a safety belt properly fastened about such person's body at all times when the vehicle is in motion.

. . . .

"(e) Law enforcement officers shall not stop drivers for violations of this act in the absence of another violation of law. A citation for violation of this act shall not be issued without citing the violation that initially caused the officer to effect the enforcement stop."

K.S.A. 8-2504(2) states that "from and after July 1, 1987, persons violating subsection (a) of K.S.A. 8-2503 shall be fined not more than $10 including court costs."

K.S.A. 21-3105 reads:

"A crime is an act or omission defined by law and for which, upon conviction, a sentence of death, imprisonment or fine, or both imprisonment and fine, is authorized or, in the case of a traffic infraction, a fine is authorized. Crimes are classified as felonies, misdemeanors and traffic infractions.

"(1) A felony is a crime punishable by death or by imprisonment in any state correctional institution or a crime which is defined as a felony by law.

"(2) A traffic infraction is a violation of any of the statutory provisions listed in subsection (c) of K.S.A. 8-2118 and amendments thereto.

"(3) All other crimes are misdemeanors."

According to the State's line of reasoning, because failure to wear a seat belt is not listed in K.S.A. 1994 Supp. 8-2118, it is not a traffic infraction and because it is not a felony, it must be a misdemeanor. The State argues that under K.S.A. 8-2104(b), K.S.A. 1994 Supp. 8-2106(a)(8), and K.S.A. 1994 Supp. 8-2106(e), an officer may take a person into custody for a misdemeanor. Because Schmitter could have been lawfully arrested for failure to wear his seat belt, the State argues that the officer had a right to search him under K.S.A. 22-2501, which reads:

"When a lawful arrest is effected a law enforcement officer may reasonably search the person arrested and the area within such person's immediate presence for the purpose of

"(a) Protecting the officer from attack;

"(b) Preventing the person from escaping; or

"(c) Discovering the fruits, instrumentalities, or evidence of the crime."

There are several problems with this argument. While the record does not show exactly when Schmitter was placed under arrest, it does show that the officer did not arrest Schmitter before he conducted the pat-down and the subsequent search which produced the crack cocaine. There was no testimony in the record that the officer ever intended to place Schmitter under arrest. The officer's testimony at the suppression hearing was that his normal procedure was to either issue a warning or a citation in this type of situation. The officer testified that but for the discovery of the cocaine, he

would have either issued a warning or a citation. There is no indication that this was a search incident to a lawful arrest as there was no arrest; indeed, there was not even an intent to arrest until after the officer searched Schmitter and found the cocaine.

In *State v. Epperson*, 237 Kan. at 715, the Kansas Supreme Court stressed that to constitute a search incident to a lawful arrest,

"a lawful arrest must come first, followed by a search, and the arrest must be based on probable cause or a warrant to be lawful. Here, the officer first conducted the search and then arrested the defendants as a result of the items found in the search. The argument that an officer may conduct any search he wishes and, if he finds contraband, justify the search on the basis that it was incident to the later resulting arrest, is hardly persuasive. The search incident to a lawful arrest exception is codified in K.S.A. 22-2501."

Accord *State v. Vandiver*, 19 Kan. App. 2d 786, 794, 876 P.2d 205 (1994), *aff'd* 257 Kan. 53, 891 P.2d 350 (1995).

It is apparent that the officer had no intention of arresting Schmitter for failure to wear a seat belt and decided to arrest him only after finding the cocaine. This was not a valid search incident to an arrest.

The State's contention that the evidence should not be suppressed under the inevitable discovery exception to the exclusionary rule is equally untenable.

"The Fourth Amendment to the United States Constitution and Sec. 15 of the Kansas Bill of Rights protect against unreasonable searches and seizures of persons and property. The exclusionary rule prohibits introduction into evidence of both materials directly obtained from an illegal search or seizure and evidence derived from the unlawful search or seizure. *Nardone v. United States*, 308 U.S. 338, 341, 84 L. Ed. 307, 60 S. Ct. 266 (1939)." *State v. Daly*, 14 Kan. App. 2d 310, 314, 789 P.2d 1203, *rev. denied* 246 Kan. 769 (1990).

"Evidence obtained unlawfully in violation of a defendant's constitutional rights is admissible under the inevitable discovery exception to the exclusionary rule where the prosecution can prove by a preponderance of the evidence that the unlawfully obtained evidence would have ultimately or inevitably been discovered by lawful means. Adopting *Nix v. Williams*, 467 U.S. 431, 81 L. Ed. 2d 377, 104 S. Ct. 2501 (1984)." *State v. Waddell*, 14 Kan. App. 2d 129, Syl. ¶ 4, 784 P.2d 381 (1989).

The facts of this case do not fit the exception to the exclusionary rule. The record shows that prior to the time the officer found the

cocaine, the officer had not and did not intend to arrest Schmitter. Thus, without the search, which the State erroneously contends was incident to a lawful arrest, the officer would have never found the cocaine.

While the question of whether an officer can lawfully arrest a passenger for failure to wear a seat belt is interesting, it need not be answered here. The record clearly shows that the arrest did not take place until after the search and, under *Epperson*, this clearly was illegal; whether Schmitter could have been arrested is academic.

The trial judge found that the search was justified because Schmitter consented to the search. The judge also stated that it was reasonable for the officer to "take steps to verify who he is arresting or ticketing." In other words, it appears the judge found that the pat-down was authorized.

Again, a search conducted without a warrant issued upon probable cause is per se unreasonable, subject to a few well-delineated exceptions. *State v. Johnson*, 253 Kan. 356, 362, 856 P.2d 134 (1993). The State has the burden to prove the consent was voluntary by a preponderance of the evidence. Whether the consent was voluntary is examined under the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973). However, when the consent to search is preceded by a Fourth Amendment violation, the State, in addition to proving the voluntariness of the consent, must also establish a break in the causal connection between the illegality and the evidence thereby obtained. *U.S. v. Melendez-Garcia*, 28 F.3d 1046, 1053 (10th Cir. 1994). "The trial court's findings with regard to the existence and voluntariness of a consent to search will not be overturned on appeal unless clearly erroneous." *State v. Johnson*, 253 Kan. 356, Syl. ¶ 1.

"A seizure occurs when a reasonable person under all the circumstances would believe, based on a police officer's conduct, that he or she was not free to go."

"Consent to a search operates to remove the taint of illegality of the seizure if voluntarily given. Voluntariness is measured in part by the proximity in time of the Fourth Amendment violation and the consent, intervening circumstances, and

the purpose and flagrancy of the police officers' misconduct." *State v. Crowder*, 20 Kan. App. 2d 117, Syl. ¶¶ 3, 5, 887 P.2d 698 (1994).

The facts of this case show that once the officer directed Schmitter to place his hands on the hood of the car and spread eagle, and made the illegal *Terry* pat-down search, Schmitter had been seized. It would be patently unreasonable to presume that a person who is placed in the awkward and undignified position of being spread eagled across the hood of a car could in any way reasonably believe he or she was free to leave. While Schmitter was still in this spread eagle position, the officer asked if he could search the inside of Schmitter's pockets. It was at this time that Schmitter consented to the search. Even if Schmitter was unreasonably seized at this point, his consent to the search may operate to remove the taint of the illegal nature of the seizure if it was voluntarily given under the totality of the circumstances. 20 Kan. App. 2d at 122.

"The Supreme Court has proved three factors that are especially relevant to determining whether a consent is tainted by a preceding illegal search or seizure: 1) the temporal proximity between the police illegality and the consent to search; 2) the presence of intervening circumstances; and particularly 3) the purpose and flagrancy of the official misconduct." *U.S. v. Melendez-Garcia*, 28 F.3d at 1054.

Accord *State v. Crowder*, 20 Kan. App. 2d at 122.

In this case, the consent immediately followed the illegal pat-down and was given while Schmitter was still spread eagled on the car. There were no intervening circumstances. The purpose of the police conduct was to verify Schmitter's identity, and the illegal pat-down was clearly not within the *Terry* exception.

The facts of this case show that Schmitter exhibited no inability to understand the officer's request and had no condition that would interfere with his ability to give a voluntary consent, the time of the detention was relatively short, and there was no indication that the officer threatened him in any way. However, the request for consent was virtually simultaneous with the illegal pat-down, and there was no break in the activity between the pat-down and the consent. In addition, the officer's actions were clearly improper as *Terry* allows only for a pat-down for weapons, not evidence, and having Schmitter spread eagled across the hood of the car appears

particularly flagrant in the absence of the officer having some kind of objective reason for being in fear for his safety or having a reasonable and articulable suspicion that Schmitter was guilty of something more than a seat belt violation. The consent was not voluntary as a matter of law, and the evidence should have been suppressed as fruit of the poisonous tree under *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963).

Schmitter's conviction is reversed and the case is remanded with instructions that the sentence be vacated and the evidence seized in the unlawful search be suppressed.