(11 P.3d 1177)

No. 83,403

STATE OF KANSAS, *Appellee*, v. REGINALD EARL DAVIS, *Appellant*.

Opinion filed October 20, 2000.

*Daniel Estes*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for the appellant.

*Vernon E. Buck* assistant county attorney, *Joe E. Lee*, county attorney, and *Carla J. Stovall*, attorney general, for the appellee.

Before PIERRON, P.J., LEWIS, J., and PAUL E. MILLER, District Judge, assigned.

MILLER, J: Reginald Earl Davis appeals his conviction of one count of possession with intent to use drug paraphernalia in violation of K.S.A. 1999 Supp. 65-4152, and one count of possession of cocaine in violation of K.S.A. 1999 Supp. 65-4160. He claims evidence introduced against him at trial should have been suppressed due to an illegal search. We agree and reverse.

Because search and seizure cases are often fact sensitive and the outcome of such cases depend on the existence or nonexistence of particular facts, the facts of this case will be set out in some detail.

On February 12, 1999, Detective James Davis of the Emporia Police Department was advised that Dorothea Smith, a suspect in a forgery case he was investigating, was in a taxi en route to the bus station. Detective Davis arrived at the bus station and Officer Stormont also arrived at the same time in another vehicle. Upon arrival, the officers noticed a parked taxi occupied by two backseat passengers, Smith and the appellant.

Detective Davis approached the taxi, removed Smith, and arrested her. He then patted her down for weapons. He directed Officer Stormont to remove the appellant from the taxi and pat him down.

The officers testified that they had no reason to believe Smith was armed and dangerous or that any evidence of the forgery would be found in the taxi or on Smith's person. Further, the appellant was not a suspect in the forgery or any other investigation. The appellant complied peaceably and without resistance to Officer Stormont's direction that he get out of the taxi and submit to a pat-down search. Nothing was found on appellant's person as a result of the search. When the appellant was patted down, Smith was already under arrest and in handcuffs on the other side of the car.

After patting down the appellant, Officer Stormont reached into the taxi to retrieve the appellant's jacket. He intended to return the jacket to the appellant and allow him to go on his way. Before giving the jacket to the appellant, however, Officer Stormont felt it for weapons. In doing so, he felt something hard which was about the size of an ink pen. He testified at both the suppression hearing and at trial that he had no idea what the object was. He further testified that it was not immediately apparent to him that the object was either a weapon or contraband.

The object turned out to be three small metal pipes which later were determined to contain cocaine residue. The appellant was placed under arrest for possession of drug paraphernalia. He later admitted that the pipes belonged to him and that he had smoked them.

The appellant filed a motion to suppress, claiming the officer was not justified in searching him or his jacket. The trial court denied the motion to suppress.

The appellant asserts three grounds as the basis for his motion to suppress: (1) The search of him cannot be upheld as a search incident to Smith's arrest; (2) Officer Stormont had no reasonable suspicion to search him; and (3) the evidence seized was not immediately apparent as a weapon or contraband, so it should not have been removed from his jacket.

"Upon the hearing of a motion to suppress evidence, the State bears the burden of proving to the trial court the lawfulness of the search and seizure." *State v. Damm,* 246 Kan. 220, 222, 787 P.2d 1185 (1990). The factual findings of a trial court will be reviewed for substantial competent evidence. *State v. DeMarco,* 263 Kan. 727, 732, 952 P.2d 1276 (1998). When facts material to a decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law subject to unlimited review. *State v. Rexroat,* 266 Kan. 50, 53, 966 P.2d 666 (1998). The material facts in this case are not in dispute.

## Search Incident to Smith's Arrest

The appellant claims that the searches of his person and his jacket were illegal because he should not have been searched incident to Smith's arrest. Absent reasonable suspicion to do so, he argues, he should not have been searched.

Searches conducted without a warrant based on probable cause are per se unreasonable, subject to a few exceptions. *New York v. Belton,* 453 U.S. 454, 457, 69 L. Ed. 2d 768, 101 S. Ct. 2860, *reh. denied* 453 U.S. 950 (1981). One exception is a search conducted pursuant to a lawful arrest. *Chimel v. California,* 395 U.S. 752, 763, 23 L. Ed. 2d 685, 89 S. Ct. 2034, *reh. denied* 396 U.S. 869 (1969). The purpose for allowing searches of an arrestee and the immediately surrounding area is to allow law enforcement officers to remove any weapons and to prevent the concealment or destruction of evidence. 395 U.S. at 763. However, "[t]he scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *Terry v. Ohio,* 392 U.S.

1, 19, 20 L. Ed 2d 889, 88 S. Ct. 1868 (1967) (quoting *Warden v. Hayden,* 387 U.S. 294, 310, 18 L. Ed 2d 782, 87 S. Ct. 1642 [1967]).

K.S.A. 22-2501 codifies the search incident to a lawful arrest doctrine:

"When a lawful arrest is effected a law enforcement officer may reasonably search the person arrested and the area within such person's immediate presence for the purpose of
"(a) Protecting the officer from attack;
"(b) Preventing the person from escaping; or
"(c) Discovering the fruits, instrumentalities, or evidence of the crime."

The issue presented here is whether an individual may be searched incident to the arrest of another person if the individual is within the arrestee's immediate area. Here, in denying the appellant's motion to suppress, the trial court relied heavily on *State v. Thompson,* 3 Kan. App. 2d 426, 596 P.2d 174 (1979). In *Thompson,* the defendant was convicted of attempted aggravated robbery of a liquor store, during which he brandished a firearm. While investigating the crime, the police instituted a stakeout of a local motel. The defendant, another male companion, and Caprice Stark, a known female companion of the defendant, emerged from the motel. They entered an automobile thought to have been used in the crime, and the police gave chase, eventually catching them. During the arrest of the defendant, a detective on the scene observed that Stark's purse seemed to be unusually heavy. He removed it from her arm and tossed it to the rear of the vehicle. As he took the purse, he felt an object he thought to be a firearm. After Stark was secured, the detective opened the purse and found a gun. A subsequent search of the purse produced another gun. Both guns were admitted into evidence over the defendant's objection.

On appeal, this court noted: "The determinative question is whether the search of Stark's purse was based upon reasonable suspicion (K.S.A. 22-2402) and/or a search incident to a lawful arrest (K.S.A. 22-2501)." 3 Kan. App. 2d at 431. This question was disposed of with the following analysis:

"The facts here undeniably support that there was probable cause to arrest the defendant, and in connection with that arrest to make a search of his person and the area within his immediate presence as contemplated by K.S.A. 22-2501. We think the facts also fairly show that the defendant was known to have a woman companion, even though it is not contended that she personally participated in any of the alleged crimes under discussion. The fact that Ms. Stark was in the company of the two suspects under the existing circumstances brings the search of her purse within the permissible limits of warrantless search and seizure as described in [Terry]; State v. Jackson, 213 Kan. 219, 515 P.2d 1108 (1973); State v. Hazelwood, 209 Kan. 649, 498 P.2d 607 (1972); and K.S.A. 22-2402. The fact that the purse was thrown to the road after being taken from Stark's person was not such a removal from the area under her control so as to prohibit the protective search at the scene prior to returning the purse to Ms. Stark before transporting the defendant to the police station." 3 Kan. App. 2d at 431.

The appellant argues the search in *Thompson* was upheld based on reasonable suspicion, not as a search incident to arrest. The quoted passage seems to indicate otherwise. The decision appears to be based both on reasonable suspicion and on a search incident to a valid arrest. Though there is not a detailed explanation of the *Thompson* court's reasoning, the point seems to be that Stark could be searched because she was within the immediate area of the defendant at the time of his arrest.

The State argues that due to the appellant's and Smith's close proximity in the taxi, the search was warranted. Both sides cite various cases involving vehicles stopped for traffic violations where passengers were searched or seized. The case at bar does not involve a traffic violation and does not lend itself squarely to a comparison to those cases. The most helpful is *State v. Burks,* 15 Kan. App. 2d 87, 803 P.2d 587, *rev. denied* 248 Kan. 997 (1991). *Burks* involved the stop of a vehicle for speeding. This court held that absent reasonable suspicion a hitchhiker in the passenger seat could not be removed from the vehicle and searched. 15 Kan. App. 2d at 95. The court listed one of the subissues to be resolved was whether the pat-down of the defendant could be justified as incident to the "arrest" of the driver. 15 Kan. App. 2d at 89. The court noted: "The pat-down search of defendant was separate and distinct from the stop of the vehicle for speeding. Therefore, pursuant to the statute, the troopers must have had reasonable suspicion to

search defendant." 15 Kan. App. 2d at 92. Though the opinion never again explicitly mentions the "arrest" of the driver, it seems as though a search of the passenger within the immediate area of the driver would not have been justified.

In this case, the question is whether the appellant may be searched under K.S.A. 22-2501 because he was near Smith when she was arrested. There is no indication that Officer Stormont saw any movement between Smith and the appellant that would have led him to believe that the two were exchanging weapons or attempting to hide contraband or evidence. Officer Stormont had no information that the appellant was involved in the forgery or that there would be any evidence found in the taxi. By following the State's reasoning, an individual's Fourth Amendment rights would be lost for being in close proximity to an arrestee. Without requiring reasonable suspicion, any individual within the immediate area of an arrestee could be searched, whether or not the individual is associated with the arrestee. *Thompson* may indicate that under its particular facts, a panel of this court felt mere proximity was sufficient to justify an individual's search incident to the arrest of another person. However, *Burks* is a more recent and clearer case and sets forth the more logical requirement: There must be a reasonable, articulable suspicion to search an individual in close proximity to an arrestee. Based on this requirement, the trial court erred in denying the appellant's motion to suppress by finding his close proximity to Smith justified the search of his person.

## Reasonable Suspicion to Search Davis

K.S.A. 22-2402 concerns the stopping of a suspect. It allows a law enforcement officer, without making an arrest, to stop any person in a public place whom the officer reasonably suspects is committing, has committed, or is about to commit a crime, and demand the name and address of the suspect and an explanation of the individual's actions. K.S.A. 22-2402(1). The officer may also frisk the person for weapons if the officer reasonably suspects it is required for his or her personal safety. K.S.A. 22-2402(2).

This statute is patterned after the *Terry* test. *Burks*, 15 Kan. App. 2d at 92. "The officer must have a reasonable conclusion 'that crim-

inal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous.' " 15 Kan. App. 2d at 92 (quoting *Terry,* 392 U.S. at 30). In *State v. Jackson,* 213 Kan. 219, 225, 515 P.2d 1108 (1973), the court interpreted the requirements K.S.A. 22-2402:

"[I]n order to justify the search for weapons authorized under the provisions of subsection (2) of 22-2402, the officer must have prior knowledge of facts or observe conduct of the person or receive responses to the limited interrogation authorized by subsection (1) which, in the light of his experience, would cause the officer to reasonably suspect that his personal safety requires such search."

Again, Officer Stormont did not articulate any fear or concern for his personal safety. He testified Detective Davis had Smith under control, presumably causing Officer Stormont no concern. There would have been no need to do anything beyond removing the appellant from the car and asking for identification. Officer Stormont did not testify about anything that would have led him to believe the jacket contained any weapons. His only explanation for removing the jacket from the taxi was that he was going to return it to the appellant and allow him to leave, but he first wanted to ensure there were no weapons in the jacket.

The *Thompson* case is again relevant here. The *Thompson* court upheld the search of Stark's purse even though there was no evidence she was involved in the crimes. The court stated that Stark being in the company of the suspects under the existing circumstances made the search valid. 3 Kan. App. 2d at 431. *Thompson* involved the attempted armed robbery of a liquor store and the officers had reasonable suspicion to believe the suspects were armed. It can easily be assumed that the officers also would have believed anyone with the suspects during the time they had been fugitives would also be armed. In the present case, Officer Stormont testified he had no information that either Smith or the appellant were armed, but he knew he was dealing with a suspected felon, Smith. He did not testify to any fear on his part. *Thompson* is distinguishable and does not validate the search of the appellant or his jacket.

The State cites *State v. Johnson,* 253 Kan. 75, 853 P.2d 34 (1993), in support of its position. *Johnson* involves the search and

arrest of an individual who was acting very suspiciously. The circumstances in *Johnson* are not analogous to the one at bar, and *Johnson* is not helpful to the State's position.

## The Plain Feel Exception

Even if the searches of the appellant and his jacket were valid, there still remains the question whether the officer was justified in removing the items from the jacket. The appellant argues the plain feel exception to the warrant.

The plain feel exception is an extension of the plain view exception to the warrant requirement. *State v. Wonders*, 263 Kan. 582, 590, 952 P.2d 1351 (1998). The United States Supreme Court defined the "plain view" doctrine in *Minnesota v. Dickerson*, 508 U.S. 366, 375, 124 L. Ed. 2d 334, 113 S. Ct. 2130 (1993):

> "Under that doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. [Citations omitted.] If, however, the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object—*i.e.*, if 'its incriminating character [is not] "immediately apparent," ' [citation omitted]—the plain-view doctrine cannot justify its seizure."

*Dickerson* also applied this "immediately apparent" standard to a discovery made during a pat-down (plain feel exception). 508 U.S. at 375. The plain feel exception was made applicable to Kansas in *Wonders*. 263 Kan. at 592. Therefore, if the identity of the items in the appellant's pocket was not immediately apparent to Officer Stormont, there was no basis for their removal.

"Immediately apparent" has been interpreted to mean the officer must have reasonable or probable cause to believe it is immediately apparent that what the officer is feeling is a weapon or contraband. 263 Kan. at 598. By any definition of "immediately apparent," that requirement was not met in this case.

At the hearing on the motion to suppress, Officer Stormont testified he opened the door to the taxi, took out the jacket, and patted it down to ensure there were no weapons in it. He did this because he was going to give the jacket back to the appellant and let him go. He felt something hard and could not tell what it was, so he

removed the items. On cross-examination, Officer Stormont repeated several times that he had no idea what the objects were when he felt them. He also testified that the items were approximately 2 to 3 inches long and he could not rule out that the items may have been something innocent, such as an ink pen.

Officer Stormont's testimony at trial was virtually identical. He repeated that he did not know what the items were and felt nothing that was immediately apparent to him as being a weapon or contraband.

In its ruling, the trial court stated that Officer Stormont had the right to search the appellant because he was sitting next to a suspected felon and things could have been handed back and forth. The court then found that the search of the jacket was a logical extension of the search of the appellant's person since the jacket could have contained weapons. Finally, the court ruled that although there were a number of legitimate items that Officer Stormont could have been feeling in the jacket, it was reasonable for him to take them out to determine if they were in fact weapons.

The trial court misapplied the *Wonders* requirements. The identity of the metal pipes was not immediately apparent to Officer Stormont. His direct testimony contradicts the very assertion. It is not required that the officer be certain of the identity of the object. 263 Kan. at 596. However, under all the circumstances, he must have reasonable or probable cause to believe the object is associated with criminal activity. 263 Kan. at 597. Officer Stormont had absolutely no idea what he was feeling. Under *Wonders*, he had no reason to remove the objects from the jacket.

The appellant Davis should not have been searched incident to Smith's arrest. Officer Stormont did not have reasonable suspicion of criminal activity sufficient to justify a search of Davis independent of Smith's arrest. Further, Officer Stormont had no basis to remove the items from the appellant's jacket. The evidence seized and the statements made later by the appellant must be suppressed as fruit of the poisonous tree. See *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed 2d 441, 83 S. Ct. 407 (1963).

Reversed and remanded to grant the motion to suppress.