(784 P.2d 381)

No. 63,340

STATE OF KANSAS, *Appellee*, v. PHILLIP L. WADDELL, *Appellant*.

Opinion filed December 22, 1989.

*Kiehl Rathbun*, of Wichita, for the appellant.

*Bruce Stewart,* assistant district attorney, *Mona Furst,* assistant district attorney, *Nola Foulston,* district attorney, and *Robert T. Stephan,* attorney general, for the appellee.

Before LEWIS, P.J., ELLIOTT and RULON, JJ.

LEWIS, J.: The defendant/appellant, Phillip L. Waddell, appeals from the denial by the trial court of his motion to suppress the introduction of certain evidence obtained in the search of his person.

Finding no error, we affirm.

On November 30, 1987, Ronald Parker was performing his duties as a motorcycle traffic enforcement police officer in the City of Wichita. While in the performance of those duties, Parker heard tires squealing and turned to observe Waddell's vehicle make a right turn at a rather high rate of speed. As Parker observed the vehicle, it was fishtailing and left of center.

Parker pursued Waddell, intending to write him a ticket for a violation of the traffic laws. Pursuant to signals from Parker, Waddell dutifully pulled his vehicle over, got out of the vehicle, and handed Parker his driver's license. Parker detected the odor of alcohol on Waddell's breath, determined that Waddell might be under the influence of alcohol, and asked Waddell to take part in some field sobriety tests, to which Waddell acquiesced without complaint or hesitation.

Waddell did not perform the field sobriety tests to Parker's satisfaction, and Parker advised Waddell that he would have to remain at the scene until the Breathalyzer (BAT) van could arrive and a breath test could be conducted on Parker.

While waiting for the BAT van to arrive, Parker requested a license check on Waddell, which revealed that Waddell was driving on a suspended license.

After the field sobriety tests were conducted, Parker observed Waddell place his hand in his right pocket, pull something out of that pocket, and transfer it to his left pocket. After this observation, Parker instructed Waddell to turn around and place his hands on the trunk of the car while he, in his own words, "began a frisk."

Parker testified that he did not "patdown" Waddell in a search for weapons. Instead, he reached into Waddell's right pocket and pulled out a small, single-blade pocket knife. He then reached into Waddell's left pocket and removed a brass pipe, which he knew to be a "hash pipe," with some residue in the bowl, one brown vial, and one white vial with white residue in its base.

Upon being subjected to the appropriate chemical testing, the brass pipe and the vials were found to contain marijuana and cocaine. Waddell was charged with and convicted of possession of cocaine after a previous conviction, a class B felony, and possession of marijuana after a previous conviction, a class D felony. In addition to the felony charges, Waddell was convicted of driving under the influence, transporting an open container of a cereal malt beverage, driving while his license was suspended, and driving without proof of liability insurance.

Parker testified that, during the process of stopping the vehicle, conducting field sobriety tests, searching Waddell, and waiting on the BAT van, Waddell was polite and cooperative. Parker further testified that he had no fear that Waddell would attack him and no reason to believe Waddell had a weapon on his person. Parker also indicated that, at the time of the search of Waddell, Waddell was not under arrest but merely was detained for investigation and that he did not place Waddell under arrest until some time after the search.

The evidence further indicates that the result of Waddell's Breathalyzer reading was 0.105.

Parker testified that persons who are found to be driving while their licenses are suspended are arrested and taken to the county jail, as are persons who are found to be driving with a breath alcohol concentration in excess of 0.10.

The State, in its brief, argues that the search was proper as being done incident to Waddell's arrest. The obvious problem with the State's argument in this respect is that Parker, as the chief witness for the State, testified that he had not arrested Waddell at the time of the search and did not arrest Waddell until sometime later. As we view the situation, the State is bound by the testimony of Parker on this issue. If Parker says, as he did, that Waddell was not under arrest at the time of the search, we will take him at his word; Waddell was not under arrest at

the time of the search, and the search cannot be justified as incident to a lawful arrest.

The State argues that the search was proper under the doctrine of *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), which permits "stop and frisk" searches under certain conditions. In that decision, the United States Supreme Court held that a police officer may conduct a stop and frisk search of an individual without violating that individual's Fourth Amendment rights when he observes unusual, suspicious conduct, which leads him to reasonably conclude illegal activity may be occurring, and when he has a reasonable belief that his safety is in danger. The sole justification for the frisk is the officer's safety and the extent of the frisk must be limited to meet that objective. 392 U.S. at 29-30.

In Kansas, we have codified the stop and frisk rules of *Terry v. Ohio* in K.S.A. 22-2402 (see *State v. Hamilton*, 222 Kan. 341, 344, 564 P.2d 536 [1977]). K.S.A. 22-2402 provides:

"(1) Without making an arrest, a law enforcement officer may stop any person in a public place whom he reasonably suspects is committing, has committed or is about to commit a crime and may demand of him his name, address and an explanation of his actions.

"(2) When a law enforcement officer has stopped a person for questioning pursuant to this section and reasonably suspects that his personal safety requires it, he may search such person for firearms or other dangerous weapons. If the law enforcement officer finds a firearm or weapon, or other thing, the possession of which may be a crime or evidence of crime, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person."

In the instant matter, there can be no question but that the requirements of section (1) of the statute were complied with. Parker had the right to stop Waddell when he observed a violation of the traffic laws of this State.

The real question at hand is whether the search of Waddell's pockets exceeds the frisk authorized by *Terry v. Ohio* and K.S.A. 22-2402(2). We hold that it did exceed authorized limits and that the search and seizure cannot be justified under the "stop and frisk" doctrine.

We note that, in order to justify a "frisk" search, the officer must reasonably believe that his personal safety is at risk. *State v. Webb*, 13 Kan. App. 2d 300, 302, 769 P.2d 34 (1989). Under

*Terry,* the sole justification for the frisk is the protection of the officer, and the preservation of evidence is not a consideration to justify such a search. Any action outside the scope necessary to detect a weapon is unlawful. *Terry,* 392 U.S. at 97.

When we examine the record in this case, it is apparent that Parker had no fear of Waddell, nor did he have any reasonable basis for suspecting that Waddell may have had a weapon on his person. It seems to us that the primary justification for a frisk, *i.e.* concern for the safety of the officer, is not present. Even conceding that Parker had valid grounds to frisk Waddell, we are convinced that the "frisk" in this case went beyond the limits allowed.

The United States Supreme Court further discussed the rules set forth in *Terry v. Ohio* in *Sibron v. New York,* 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889 (1968), in which defendant was not known to the police officer who stopped and searched him. While that officer was on patrol, he had observed defendant talking to several individuals known by the officer to be drug addicts. Later, the officer saw defendant in a restaurant with three more drug addicts and ordered him to come outside. When defendant and the officer were outside the restaurant, the officer stated, "You know what I am after." At that point, Sibron said something and reached into his pocket. Simultaneously, the officer put his hands into the same pocket and discovered several glassine envelopes containing heroin. The officer never testified he was in any fear for his safety. The Court found that the officer did not have reasonable grounds to search Sibron. 392 U.S. at 64. The Court further stated that, even if the officer had a justifiable fear for his safety, the frisk went beyond that allowed. 392 U.S. at 65. Under *Terry,* a search for weapons is limited to patting the outer clothing of the suspect for concealed objects which might be used as weapons, hence the term "patdown." 392 U.S. at 65. The officer in *Terry* discovered concealed objects which might be used as weapons as a result of the patdown he did on Terry's outer clothing and it was only after these items were discovered that he put his hands in defendant's pockets. In *Sibron,* the officer made no attempt at an initial patdown to discover weapons, but immediately put his hands in Sibron's pockets and took out envelopes of heroin. 392 U.S. at 65. The

search in *Sibron* was obviously not limited to discovering whether the defendant was armed. The Supreme Court held, therefore, that the search violated Sibron's Fourth Amendment rights and the evidence was suppressed. 392 U.S. at 65-66.

The Tenth Circuit in *U.S. v. Santillanes*, 848 F.2d 1103 (10th Cir. 1988), followed *Sibron* and noted that the scope of the search allowed under *Terry* is limited to patting down the outer clothing of the suspect for objects which might be weapons. In *Santillanes*, officers searched appellant's pockets and discovered a beer can, money, and heroin. They searched appellant even though their initial patdown did not reveal weapons. The Court suppressed the evidence because there was no reasonable reason to frisk the defendant. Moreover, the Court found that the frisk of Santillanes went beyond that necessary to discover weapons. 848 F.2d at 1109.

In applying the logic of those cases to the present case, it is apparent that Officer Parker never patted down Waddell's outer clothing before reaching into Waddell's pockets. He testified that he never saw any bulges or suspicious-looking articles before he searched Waddell. He simply put his hands into Waddell's pockets and removed what he found in those pockets. This search goes beyond that which is authorized by *Terry v. Ohio* and the companion cases cited above.

Under the facts, we hold that, since Officer Parker had no right to put his hands in Waddell's pockets and remove items from those pockets without first patting him down to discover whether he had any weapons, the search of Waddell's pants pockets violated his Fourth Amendment rights against unreasonable search and seizure. Therefore, the exclusionary rule should be applied unless an exception to it can be found.

The evidence in this case indicates that, even without Officer Parker's illegal search of Waddell, the marijuana and cocaine in his pants pockets would have been inevitably discovered by lawful means by the police during an inventory search at the jail. The fact is, as a result of Parker's license check, it was determined that Waddell was driving on a suspended license; as a result of the Breathalyzer test, it was discovered Waddell had 0.105 alcohol concentration in his breath and was presumed to be under the influence. Parker testified that, in Wichita, an individual found

to be driving under either of these circumstances would be arrested and taken to jail. Factually, then, Waddell would have been arrested and taken to jail regardless of whether the search of his person had been conducted and, as an inevitable result of the inventory search of his person at the jail, the marijuana and cocaine would have been discovered.

We hold that the marijuana and cocaine found during the unlawful search of Waddell is admissible under the inevitable discovery exception to the exclusionary rule as enunciated in *Nix v. Williams*, 467 U.S. 431, 81 L. Ed. 2d 377, 104 S. Ct. 2501 (1984).

In *Nix*, the defendant was the primary suspect in the murder of a ten-year-old child whose body had not been found. Police officers agreed to transport Williams back to Des Moines, Iowa, without questioning him. At that time, a large search party, consisting of 200 volunteers, was conducting a systematic search of the area for the child's body. As police were transporting Williams, one of the officers suggested that Williams should reveal the location of the body so that her parents could give her "a Christian burial." This suggestion was apparently taken to heart by Williams who, shortly thereafter, revealed the location of the body as well as several other items of evidence subsequently admitted against him.

During his trial, Williams argued that the body and other items of evidence had been located as a result of an interrogation which violated his Sixth Amendment rights, and that, under the "fruit of the poisonous tree" doctrine, all evidence secured as a result of that unlawful interrogation should be excluded.

The United States Supreme Court held that, although the girl's body and other evidence were indeed found as a result of the unlawful interrogation of Williams, this evidence remained admissible because of the Court's conclusion that it would have inevitably been discovered lawfully by the search team which was combing the area.

The Court reasoned that the exclusionary rule was adopted to discourage and deter the police from violations of constitutional or statutory protections. If that was the basis of the rule, it reasoned that, if the State could prove factually that application

of the rule would have no deterring value, the rule would not be applied:

"It is clear that the cases implementing the exclusionary rule 'begin with the premise that the challenged evidence is *in some sense* the product of illegal governmental activity.' *United States v. Crews*, 445 U.S. 463, 471 [63 L. Ed. 2d 537, 100 S. Ct. 1244] (1980) (emphasis added). Of course, this does not end the inquiry. If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means—here the volunteers' search—then the deterrence rationale has so little basis that the evidence should be received. Anything less would reject logic, experience, and common sense." 467 U.S. at 444.

The Court noted in *Nix* that the " 'vast majority' of all courts, both state and federal, recognize an inevitable discovery exception to the exclusionary rule." 467 U.S. at 440. While that statement may very well have been correct, it is *Nix* that recognized and adopted as the law of the land the inevitable discovery exception to the exclusionary rule. That exception allows the admission of unlawfully obtained evidence that ultimately or inevitably would have been discovered by lawful means.

In the case at hand, the marijuana and cocaine in Waddell's pocket were unlawfully obtained by the unlawful search of Waddell by Officer Parker. However, because Waddell had chosen to drive while his driver's license was suspended and with an alcohol concentration in his breath above 0.10, he would have been arrested and taken to jail on those charges regardless of the unlawful search. It was, therefore, inevitable that the contents of this pants pockets would have been discovered by lawful means during the arrest and booking process.

We are aware of no other reported case in Kansas in which the inevitable discovery exception to the exclusionary rule has been applied. However, we note that our Kansas Supreme Court has construed, rather liberally, several United States Supreme Court cases on exceptions to the exclusionary rule. For example, the Supreme Court has taken the decision of the United States Supreme Court in *New York v. Belton*, 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981), which expanded the right to warrantless search of an automobile, and has construed that decision rather liberally. See *State v. Deskins*, 234 Kan. 529, 673

P.2d 1174 (1983); *State v. White*, 230 Kan. 679, 640 P.2d 1231 (1982).

Given the current trend of the courts in narrowing the challenges to search and seizure and in expanding the authority of the police in that regard, it seems to be a logical progression to adopt the "inevitable discovery doctrine" as set forth in *Nix v. Williams*. We do so in this case and hold, as a result of that doctrine, the evidence against the defendant was properly admitted.

Affirmed.