(132 P.3d 478)

No. 93,487

STATE OF KANSAS, *Appellee*, v. JAMES BIEKER, *Appellant*.

Opinion filed April 7, 2006.

*Julie McKenna*, of McKenna Law Office, of Salina, for appellant.

*Bobby J. Hiebert, Jr.*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Phill Kline*, attorney general, for appellee.

Before RULON, C.J., JOHNSON, and HILL, JJ.

RULON, C.J.: Defendant James Bieker appeals the district court's denial of his motions to suppress, arguing that defendant's statements to the police were taken in violation of *Miranda* and the police officers did not possess reasonable suspicion justifying a stop and search of the defendant. We affirm.

On December 15, 2003, police investigators Janell Zimmerman and Lane Mangels received a report from Target that a suspicious individual had purchased a 96-count box of ephedrine cold tablets. The reporting employee described the individual and reported the individual had entered a blue Chevrolet Corsica upon leaving the store. As the investigators had just been to Target on another investigation and were nearby, they returned quickly and noted a car matching the description provided by the Target employee leaving the Target parking lot.

Mangels and Zimmerman ran a vehicle tag check on the Corsica and called investigators Jeremy Watkins and Glen Lippard to assist with the investigation. Mangels and Zimmerman then followed the Corsica to a Dillons Superstore, where they were joined by Watkins and Lippard.

At the Dillons store, a man, later identified as the defendant, exited the Corsica and entered the store. Watkins and Mangels followed the defendant, watching as the defendant walked through the store before eventually entering the cold medicine aisle. As the defendant left the aisle, Watkins was able to see the defendant carried at least one box of cold medicine, which appeared to be an ephedrine or pseudoephedrine product. After the defendant left the store, Mangels obtained the register copy of the defendant's receipt for the box of cold medicine.

As the defendant left the Dillons store, a female driving the Corsica stopped for the defendant near the front of the Dillons store. Followed by the investigators, the defendant and the female drove to Wal-Mart. Again, the defendant entered the store. This time Zimmerman and Lippard entered the store to conduct surveillance, while Watkins and Mangel remained in their vehicles to observe the female inside the Corsica. The defendant walked to the sporting goods section and selected a pair of black hunting gloves and then visited the pharmaceutical section and selected two boxes of Equate-brand ephedrine tablets.

As the defendant proceeded to check-out, the investigators, communicating by cell phone, decided to stop the defendant for questioning. As the defendant exited the store, Lippard approached him and identified himself as a police officer. Lippard

asked the defendant to move over to the sidewalk. The defendant complied. Shortly thereafter, Lippard was joined by Watkins, while Zimmerman and Mangels spoke to the female, later identified as the defendant's wife.

Lippard explained to the defendant the investigators had observed the defendant purchasing ephedrine or pseudoephedrine products at three different stores. The defendant responded his wife suffered from severe sinus problems and that stores would only allow consumers to purchase three boxes per visit. Lippard asked the defendant for identification, and the defendant produced his driver's license. Lippard did not return the license throughout the subsequent interview.

For purposes of officer safety, Lippard asked the defendant whether he was carrying any weapons and whether the defendant would submit to a pat-down search. The defendant responded he was not carrying any weapons but had some tools and then systematically emptied his pockets, showing Lippard each item before returning it to his pockets. However, Lippard noticed a box of cigarettes in the defendant's shirt pocket which the defendant had not shown him. Lippard inquired about the box of cigarettes. The defendant handed the box to the investigator, who looked inside it and noticed a baggie containing a brownish-colored substance which appeared to be methamphetamine.

Lippard arrested the defendant and advised him of his *Miranda* warnings. The defendant acknowledged that he understood, and, when Lippard asked whether the defendant would be willing to answer further questions, the defendant responded, "Not right now." Lippard stopped questioning the defendant, until the defendant had been transported to the Salina Police Department.

Once the defendant was placed in an interrogation room, Lippard reviewed a written statement of rights with the defendant, who acknowledged his understanding of his *Miranda* rights and indicated he was willing to speak with the investigator. In response to Lippard's query whether the purchase of ephedrine or pseudoephedrine pills was for the manufacture of methamphetamine, the defendant smiled, looked at the floor, and denied the allegations in a very quiet voice. Nevertheless, the defendant admitted

to using methamphetamine and marijuana. Prior to being booked into the jail, the defendant turned over a small glass vial containing a white powder residue, which tested positive for methamphetamine; four yellow pills, which proved to be codeine; and one white pill. As he turned over the vial, the defendant commented that it was frequently used to store his methamphetamine.

The State eventually charged the defendant with unlawful possession of ephedrine or pseudoephedrine, possession of methamphetamine, unlawful possession of codeine, and possession of drug paraphernalia. Prior to the preliminary hearing, the defendant filed a motion to suppress any incriminating statements he made to Lippard taken in violation of his *Miranda* rights. Following the presentation of the State's evidence at the preliminary hearing, the district court denied the motion to suppress.

Subsequently, the defendant filed another motion to suppress, this time challenging the lawfulness of the seizure and search outside Wal-Mart. Originally, the district court set a hearing for the motion, but, as soon as Lippard began to testify, the court questioned whether the issue had not been resolved during the preliminary hearing. The district court then continued the hearing until the court had reviewed the preliminary hearing transcript.

Prior to the date of the continued hearing, the district court filed a journal entry, indicating that the second motion to suppress was denied because the issue raised by the motion had previously been resolved by the preliminary hearing. The defendant waived a jury, and the case was tried to the court.

After the State had presented its case, the defendant renewed both motions to suppress, relying upon the testimony of the State's witnesses during the trial. This oral motion was also denied. The district court ruled the testimony at trial was not substantially different from the testimony at the preliminary hearing.

Ultimately, however, the district court found the State had produced insufficient evidence to prove beyond a reasonable doubt the defendant intended to use the ephedrine or pseudoephedrine pills to manufacture methamphetamine and ordered an acquittal on the unlawful possession of ephedrine or pseudoephedrine charge. The district court found the defendant guilty of possession

of methamphetamine, unlawful possession of codeine, and possession of drug paraphernalia, and sentenced the defendant to a controlling sentence of 11 months, suspending the sentence for 18 months of probation.

## *Miranda* Rights

The defendant first challenges the district court's admission of the defendant's incriminating statements to Lippard. The defendant contends he invoked his right to remain silent during the interview outside Wal-Mart and the investigator illegally interrogated him later at the police station.

Generally, review of a motion to suppress involves a mixed question of fact and law. An appellate court reviews the district court's factual findings for substantial competent evidence but possesses independent review of the legal determination drawn from those facts. See *State v. Green*, 32 Kan. App. 2d 789, 792, 89 P.3d 940, *rev. denied* 278 Kan. 849 (2004). However, when, as here, the material facts are undisputed, the appellate court possesses unlimited review over the entire question. See *State v. Ramirez*, 278 Kan. 402, 404, 100 P.3d 94 (2004).

Because the defendant chose not to testify at the preliminary hearing or at trial, the only testimony concerning the defendant's alleged invocation of his right to remain silent was given by Lippard. Lippard testified that, after informing the defendant of his rights, Lippard asked whether the defendant would answer some additional questions. The defendant replied, "Not right now."

The United States Supreme Court has held that an interrogation must cease as soon as a person in custody indicates, in any manner, a desire to remain silent. See *Miranda v. Arizona*, 384 U.S. 436, 474, 16 L. Ed. 2d 694, 86 S. Ct. 1602, *reh. denied* 385 U.S. 890 (1966). However, our Supreme Court, following other United States Supreme Court precedent, has ruled the invocation of the right to remain silent cannot be ambiguous or equivocal. See *State v. Holmes*, 278 Kan. 603, 618-19, 102 P.3d 406 (2004) (citing *Smith v. Illinois*, 469 U.S. 91, 83 L. Ed. 2d 488, 105 S. Ct. 490 [1984]).

Certainly, the defendant's statement that he did not wish to answer the investigator's questions "now" was unambiguous to the

extent that, at the time, the defendant wished to exercise his right to remain silent. However, the statement is equivocal to the extent that it clearly leaves open the possibility that the defendant may wish to speak to the investigator at another time.

While Kansas courts have never previously had the opportunity to consider a temporal limitation upon an invocation of the right to remain silent, the Rhode Island Supreme Court has deemed that such a limitation indicates equivocation. In *State v. Sabetta*, 680 A.2d 927, 932 (R.I. 1996), the court held that the defendant's statement to officers, "I don't want to talk about it right now," operated to limit the defendant's invocation of his right to remain silent to the moment and was not unequivocal.

If a person has asserted a temporal limitation upon the invocation of his or her right to remain silent, an ambiguity is created as to when the investigator would be able to question the person further. When a person in custody makes an ambiguous statement which might amount to the invocation of the right to remain silent or confer with counsel, the interrogator may clarify the statement but is not constitutionally required to do so. See *Holmes*, 278 Kan. at 618.

Here, Lippard was not required to inform the defendant of his *Miranda* rights in full at the police station but could have lawfully begun his interrogation by inquiring of the defendant whether he was willing to speak to the investigator at that time. But, out of an abundance of caution here, the investigator fully explained the defendant's rights. Had the defendant wished to extend his invocation of the right to remain silent, he could have easily indicated such desire to the investigator. Any incriminating statements of the defendant elicited during the subsequent interview with Lippard did not offend the defendant's *Miranda* rights.

The district court properly denied the defendant's initial motion to suppress on the basis of statements taken in violation of *Miranda*. The defendant's constitutional rights were scrupulously observed in this case.

## Second Suppression Hearing

The defendant next contends the district court erred in denying his second motion to suppress, challenging the lawfulness of the

seizure and search outside Wal-Mart. The court found the issue raised within the second motion had been sufficiently raised in the preliminary hearing and the defendant's previous motion. The defendant contends he was entitled to a separate hearing.

Although K.S.A. 22-3216(2) requires the district court to "receive evidence on any issue of fact necessary" to decide the basis for the motion to suppress, subsection (4) of the statute further indicates that a motion seeking to suppress illegally seized evidence should be filed prior to or during the preliminary hearing. Here, the defendant's second motion was filed after the preliminary hearing.

In *Holmes*, a criminal defendant challenged the district court's refusal to grant an evidentiary hearing on a motion to suppress filed after the case had been remanded to the district court for retrial, despite additional claims not raised in the motion filed prior to the first trial. A rehearing on a motion to suppress is generally left to the sound discretion of the district court. See *Holmes*, 278 Kan. at 620 (citing *State v. Riedel*, 242 Kan. 834, 837, 752 P.2d 115 [1988]).

" 'Normally, . . . the motion, when made before trial, will be heard once and disposed of; however, if at trial new or additional evidence is produced bearing on the issue of substantially affecting the credibility of the evidence adduced at the pretrial hearing of the motion, . . . [K.S.A. 22-3216] authorizes reentertainment of the motion in the court's discretion.' " *Holmes*, 278 Kan. at 622 (quoting *State v. Jackson*, 213 Kan. 219, 226, 515 P.2d 1108 [1973]).

Although the two situations discussed in *Holmes* are factually distinguishable from the present situation, we see no valid reason for not adopting an abuse of discretion standard of review of a district court's refusal to hold an evidentiary hearing on a second motion to suppress filed after the preliminary hearing has been held. "Discretion is abused when no reasonable person would agree with the trial court." 278 Kan. at 620.

We understand the defendant was not relying upon additional evidence which had not previously been presented to the district court but upon the testimony offered at the preliminary hearing. In ruling upon the second motion to suppress, the district court specifically relied upon the evidence adduced at the preliminary

hearing. The district court ruled the investigators possessed a reasonable, articulable suspicion, justifying the seizure of the defendant.

In a passing argument within his brief, the defendant suggests the failure to hold an evidentiary hearing on his second motion to suppress somehow impinged upon his due process right to a jury. He argues the decision whether to present his case to a jury in this case was fettered with unresolved legal issues involving the admissibility of evidence. This contention possesses no legal merit. Prior to trial, the district court conclusively ruled upon the defendant's outstanding suppression issues. Consequently, the defendant's strategy decision to present his case to a jury or to a judge was no different than if the district court had denied the suppression motion following a second evidentiary hearing. We fail to discern an abuse of discretion in the district court's failure to hold a second hearing in ruling upon the defendant's second motion to suppress under the facts of this case.

## Reasonable Suspicion

In his final issue, the defendant contends the prejudice caused by the district court's refusal to hold a second suppression hearing becomes apparent when the evidence adduced at trial is compared to the evidence presented during the preliminary hearing. We agree with the district court the evidence was substantially the same.

Nevertheless, relying upon the trial testimony, the defendant charges the initial stop of the defendant was not justified by reasonable suspicion. As previously stated, when the underlying facts are not disputed, this court possesses unlimited review of a suppression issue. See *Ramirez*, 278 Kan. at 404.

The Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights prohibit the government from conducting unreasonable searches and seizures. The reasonableness of the search or seizure is defined by balancing the governmental interest against the individual's interest to be secure from government intrusion. See *Terry v. Ohio*, 392 U.S. 1, 20-21, 20 L. Ed. 2d 889, 888 S. Ct. 1868 (1968).

K.S.A. 22-2402 is a codification of *Terry*. See *State v. Field*, 252 Kan. 657, 659, 847 P.2d 1280 (1993). The statute provides:

"(1) Without making an arrest, a law enforcement officer may stop any person in a public place whom such officer reasonably suspects is committing, has committed or is about to commit a crime and may demand of the name, address of such suspect and an explanation of such suspect's actions."

The defendant contends the investigators did not possess reasonable suspicion he had committed a crime or intended to commit a crime. In so arguing, the defendant contends the district court can consider only such evidence as Lippard possessed prior to stopping the defendant. To the contrary, "reasonable suspicion need not be based on a law enforcement officer's own observations or knowledge, but may be based on the collective knowledge of other officers." *State v. Steen*, 28 Kan. App. 2d 214, 216-17, 13 P.3d 922 (2000) (citing *United States v. Hensley*, 469 U.S. 221, 232-33, 83 L. Ed. 2d 604, 105 S. Ct. 675 [1985]).

Nevertheless, even if we considered only such information as might be reasonably imputed to Lippard's actual knowledge, the evidence is much broader than suggested by the defendant. The defendant claims only the package of ephedrine or pseudoephedrine tablets purchased at Target and one box of such tablets purchased at Dillons were known to Lippard. In fact, Watkins testified he was able to see that the defendant carried *at least* one box of cold medicine to the check-out at Dillons, his statement in no manner limits the possibility that the defendant carried more than one box.

Furthermore, Mangels testified he obtained the register copy of the defendant's receipt at Dillons. Therefore, presumably, Mangels knew the defendant had purchased two boxes of ephedrine or pseudoephedrine tablets at Dillons. As the evidence clearly indicates the investigators communicated with one another via cell phone, there is no reason to assume that Lippard did not know the defendant had purchased two boxes of cold medicine at Dillons.

Additionally, Lippard, himself, observed the defendant take two boxes of ephedrine- or pseudoephedrine-based cold medicine from a shelf in Wal-Mart. Shortly thereafter, Zimmerman indicated the

defendant was going through the check-out line. Although Lippard did not witness the defendant purchase the boxes of ephedrine or pseudoephedrine, it is a reasonable assumption that the defendant carried the boxes taken from the shelf to the check-out.

" '[W]e judge the officer's conduct in light of common sense and ordinary human experience. [Citation omitted.] "Our task . . . is not to pigeonhole each purported fact as either consistent with innocent [conduct] or manifestly suspicious" [citation omitted], but to determine whether the totality of the circumstances justify the detention. [Citation omitted.] We make our determination with deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances [citation omitted], remembering that reasonable suspicion represents a "minimum level of objective justification" which is "considerably less than proof of wrongdoing by a preponderance of the evidence." ' " *State v. DeMarco*, 263 Kan. 727, 735, 952 P.2d 1276 (1998) (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 109 S. Ct. 1581 [1989]; *United States v. Mendez*, 118 F.3d 1426, 1431 [10th Cir. 1997]).

Here, in addition to the large quantity of ephedrine or pseudo-ephedrine pills purchased the investigators knew the defendant visited three separate locations to purchase the pills, even though undisputed testimony demonstrated that Target permitted the purchase of up to three boxes, each containing 96 tablets. Moreover, the defendant drove approximately 2 miles from Target to Dillons and then drove approximately the same distance to Wal-Mart, which was located across the road from Target. Such circumstances are adequate to provide a reasonable law enforcement officer with an objective justification to stop the defendant for questioning.

The defendant further contends the search of the defendant was unjustified. The State provides no response in its brief to the defendant's argument on this point. We acknowledge that, absent probable cause and a valid exception to the warrant requirement, a frisk of a person by law enforcement constitutes a violation of the Fourth Amendment. See *State v. Mendez*, 275 Kan. 412, 420-21, 66 P.3d 811 (2003). Furthermore, in order to justify a warrantless search on the basis of a stop and frisk, a law enforcement officer must possess a reasonable belief that his or her safety is in danger. See *State v. Waddell*, 14 Kan. App. 2d 129, 132, 784 P.2d 381 (1989).

Although Lippard testified he requested a pat-down search of the defendant for officer safety, this court does not need to decide whether the investigator's belief in the need for such a request was objectively reasonable here. Despite requesting a pat-down search of the defendant, such search never occurred because the defendant voluntarily emptied his pockets. Consent is a valid exception to the warrant requirement of the Fourth Amendment. See *Mendez*, 275 Kan. at 421.

In *State v. Crowder*, 20 Kan. App. 2d 117, 120, 887 P.2d 698 (1994), this court noted that whether consent to the search of a person was voluntarily given is a question of fact for the trial court. Here, the district court made no specific findings concerning the search, merely finding the search did not violate the Fourth Amendment. However, as the underlying facts of the search are relatively undisputed, this court may resolve the issue as a question of law. See *Ramirez*, 278 Kan. at 404.

In *Crowder*, the defendant voluntarily initiated contact with an officer. However, in the course of the interview, the officer stepped out of his vehicle and asked Crowder to place his hands on the vehicle so that the officer could conduct a pat-down search for weapons. Crowder "complied with [the officer's] orders to pat him down." 20 Kan. App. 2d at 120. This court affirmed the district court's finding the search was consensual.

Here, although the defendant was not free to leave because the investigator held his driver's license, the defendant's compliance with the investigator's request for a pat-down search was not the product of coercion or duress. This record does not indicate that Lippard had drawn or even revealed his service weapon. Lippard was dressed in ordinary street clothes, even though Lippard had shown the defendant his badge when identifying himself. The record contains no inference that Lippard threatened the defendant in any manner or behaved in an intimidating manner. In short, there is no evidence the production of the items in the defendant's pocket was other than willingness to comply with the investigator's request. We conclude there was no violation of the Fourth Amendment.

The district court did not err in denying the defendant's oral motion to suppress evidence obtained as a result of the seizure of the defendant after the close of the State's case.

Affirmed.