(150 P.3d 912)
No. 95,651

STATE OF KANSAS, *Appellee*, v. KEVIN W. BASTIAN, *Appellant*.

Opinion filed February 2, 2007.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*James R. Watts*, assistant county attorney, and *Phill Kline*, attorney general, for appellee.

Before MCANANY, P.J., PIERRON, J., and BUKATY, S.J.

MCANANY, J.: Kevin W. Bastian appeals the district court's denial of his suppression motion which led to his convictions for possession of methamphetamine and possession of drug paraphernalia.

The charges against Bastian arise from an incident in the early morning hours of September 2, 2003. Dallas Wedel, who was house-sitting for the owners of a ranch in Butler County, called the sheriff's department to report an unknown man who had parked a pickup truck under the deck of the house. The man was in the driver's seat slumped over the wheel. The engine was off but the lights of the vehicle were on. Officer Brandon Stewart of the Butler County Sheriff's Department and Deputy Chief Todd Ball of the

Rose Hill Police Department responded to the call. Ball arrived first and waited for Stewart's arrival. When Stewart arrived and approached the vehicle, he saw the driver, Bastian, slumped over and "messing around in his feet area." As a precaution Stewart drew his weapon since he could not see Bastian's hands and did not know what Bastian was doing in the floorboard area. Stewart ordered Bastian out of the car and turned him over to Ball. Stewart then saw a syringe and an unspent cartridge designed for use in an automatic pistol. The syringe and cartridge were located in plain view on the center console of the pickup.

The presence of the syringe led Stewart to believe that Bastian was either a diabetic or a narcotics user. He did not know which. The presence of the cartridge suggested that a gun might be nearby. Therefore, Stewart searched the pickup for a weapon and any illegal drugs while Ball secured Bastian and patted him down for a weapon. A weapon which could use the kind of cartridge Stewart found would be rather bulky. Neither Ball nor Stewart found any weapon. The search of the pickup did not produce any drugs.

When Stewart questioned Bastian about why he was on the property, it appeared that Bastian was under the influence of alcohol or drugs. Bastian was jittery and had a hard time standing without support. He said he had become tired while driving and had decided to pull over and get some sleep. Bastian thought he was in Utah.

Stewart told Bastian he would have to submit to field sobriety testing. Before doing so, Stewart directed Bastian to empty his pockets. This was Stewart's regular practice before patting down a suspect. Bastian removed several small bags from his pocket which were later determined to contain methamphetamine.

Bastian was charged with possession of methamphetamine and possession of drug paraphernalia. The evidence to support the possession of methamphetamine charge came from the search of Bastian's person after he was removed from the pickup. The evidence to support the possession of drug paraphernalia charge came from the syringe which was in plain view when Bastian got out of the pickup. Bastian moved to suppress the evidence obtained from the

search of his vehicle and his person. Following a hearing, the district court denied the motion.

The case ultimately was tried to the court on stipulated facts. Bastian was found guilty on both counts. The court imposed a $500 fine and a 20 months' prison sentence, granted Bastian 12 months' probation, and ordered 12 months of postrelease supervision for the possession of methamphetamine conviction. The court imposed a $300 fine and a concurrent sentence of 6 months in jail for the possession of drug paraphernalia conviction. The court also ordered Bastian to pay $400 in restitution to the KBI for lab fees, to reimburse BIDS for his court-appointed counsel, to pay the costs of the action, and to pay a probation fee. Bastian now appeals. He argues that the district court erred in not suppressing the evidence against him and in ordering him to pay fines and the BIDS fee.

*Preservation of Issue for Review*

The State first argues that since Bastian did not renew at trial his objection to the evidence obtained at the scene, he failed to preserve this issue for appeal. The contemporaneous objection rule is found in K.S.A. 60-404. In the context of this case, the purpose of the rule is to give the trial court the opportunity to revisit its prior ruling on the suppression motion before introduction of the evidence at trial. The rule has no application here.

The same judge who heard the testimony at the suppression hearing presided over the bench trial. The judge was aware of the circumstances under which the State obtained the evidence and the defendant's objections to it. The trial consisted of a submission to the court of stipulated facts, along with a transcript of the suppression hearing and the videotape of the arrest introduced at the suppression hearing. There was no trial in the traditional sense. No witnesses were called. No additional evidence was presented. There was no point during the proceedings when Bastian's counsel had the opportunity to rise and announce, "We object!" No arguments of counsel were heard beyond those memorialized in the transcript of the suppression hearing. Bastian's objections to the evidence were clearly expressed at the suppression hearing. In an-

nouncing its ruling, the court specifically referred to having considered the parties' stipulation and the transcript of the suppression hearing. The court concluded: "I reread the transcript again last night and the Court has concluded that the defendant is guilty beyond a reasonable doubt." Bastian has preserved the issue for appeal.

### The Detention of Bastian

At the suppression hearing the State had the burden to prove that the search and seizure were lawful. See *State v. Porting*, 281 Kan. 320, 324, 130 P.3d 1173 (2006). In reviewing the district court's denial of Bastian's suppression motion, we review the district court's ultimate legal conclusion de novo. See *State v. Ackward*, 281 Kan. 2, 8, 128 P.3d 382 (2006).

The Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights protect against unreasonable searches and seizures of persons. As stated in *State v. Morris*, 276 Kan. 11, Syl. ¶ 5, 72 P.3d 570 (2003):

"A seizure of a person occurs if there is the application of physical force or if there is a show of authority which, in view of all the circumstances surrounding the incident, would communicate to a reasonable person that he or she is not free to leave and the person submits to the show of authority."

It is clear that Stewart's seizure of Bastian occurred when Stewart approached Bastian's pickup with his weapon drawn and ordered Bastian out of the pickup, and Bastian complied. The issue is whether Stewart had reasonable suspicion to detain Bastian at that point. In ruling on the suppression motion, the district court found that Stewart saw the syringe and the cartridge before ordering Bastian out of the pickup. In fact, Stewart testified that he saw these items only after ordering Bastian out of the pickup. Thus, while we normally defer to the trial court on issues of fact, we do not do so here because there was no substantial evidence to support this finding. See *Ackward*, 281 Kan. at 8. Since Bastian was detained when he complied with Stewart's order that he get out of the car, the presence of the syringe and cartridge do not provide reasonable suspicion for that initial detention.

The State asserts, however, that Stewart had reasonable suspicion to detain Bastian even before Stewart saw the syringe and the cartridge in the pickup. This assertion is well founded. In the middle of the night, Wedel discovered an unknown person parked in a pickup truck under the deck of the home he was caring for in rural Butler County. This was of sufficient concern for Wedel to call the sheriff's department. While Bastian points out that Wedel's concern was for his welfare, since Bastian was slumped over the wheel of the pickup, the fact of the matter is that Wedel called law enforcement, not an ambulance or the local rescue unit. While it is also correct that Wedel did not report that Bastian had threatened him, Wedel was concerned about Bastian's presence on private property and did not know if Bastian had permission to be there. And while Wedel did not report that Bastian had engaged in any criminal activity, Stewart had reasonable suspicion to detain Bastian based upon the belief that he was a trespasser or was about to commit a crime. Considering the totality of the circumstances, Stewart had reasonable suspicion to justify directing Bastian to get out of the pickup. See *State v. Burks*, 15 Kan. App. 2d 87, 89-90, 803 P.2d 587 (1990), *rev. denied* 248 Kan. 997 (1991). Once Stewart observed the unspent cartridge used as ammunition in an automatic pistol and Bastian's apparent intoxicated condition, he had grounds to inquire further and search the vehicle. Stewart's search of the vehicle yielded the syringe, which was in plain view.

It is important to note that Bastian does not challenge the sufficiency of the evidence to support his conviction for possession of drug paraphernalia. Rather, he challenges the district court's refusal to suppress the use of the syringe as evidence. The syringe was obtained in the search of the pickup. Since the search of the pickup was legal, Bastian's conviction for possession of drug paraphernalia stands. On the other hand, if the court erred in admitting into evidence the methamphetamine taken from Bastian's person, his conviction for possession of methamphetamine must be reversed. Therefore, we must now examine the search of Bastian's person.

*The Search of Bastian's Pockets*

Having ordered Bastian out of his pickup truck, Stewart directed Bastian to empty his pockets. This led to the discovery of contra-

band. The State seeks to justify this search under two theories: first, it was not a search at all but rather a voluntary disclosure by Bastian following Stewart's request; and second, since Stewart could have lawfully searched Bastian's pockets himself, asking Bastian to empty his own pockets was not improper. Upon examination, both of the State's arguments fail.

The State relies on *State v. Bieker*, 35 Kan. App. 2d 427, 132 P.3d 478 (2006), in contending that Bastian's disclosure of the contents of his pockets was voluntary. Since the facts relating to this portion of Stewart's investigation are not disputed, we may resolve the issue as a question of law. See *State v. Ramirez*, 278 Kan. 402, 404, 100 P.3d 94 (2004). In *Bieker*, the officer requested a patdown search of Bieker for weapons, and Bieker responded by emptying his pockets and revealing drugs. The officer had not drawn or displayed his weapon. The officer was dressed in ordinary street clothes but had shown Bieker his badge. There was no inference that the officer threatened Bieker or behaved in an intimidating manner. The court found that there was no evidence that the production of the items in Bieker's pocket was other than the result of Bieker's willingness to comply with the investigator's request.

The facts in *Bieker* stand in stark contrast to those now before us. Here, Bastian was ordered out of his vehicle at gunpoint in the middle of the night by two uniformed officers and detained by one while the other searched his pickup. While Stewart characterized Bastian's response as voluntary, Stewart testified that if Bastian had refused to empty his pockets, Stewart would have emptied them himself. In order to avoid Fourth Amendment constraints, Bastian's disclosure of the contents of his pockets, an analogue for a search by Stewart, must have been made voluntarily and without duress or coercion. See *State v. Dwyer*, 28 Kan. App. 2d 238, Syl. ¶ 3, 14 P.3d 1186 (2000), *rev. denied* 270 Kan. 900 (2001). Under these circumstances, a reasonable person would not feel free to ignore Stewart's "request." Bastian's disclosure of the contents of his pockets was not a voluntary act, but an inevitable response to Stewart's show of authority.

With respect to the State's second argument, that Stewart was justified in searching Bastian's pockets himself but instead re-

quested that Bastian empty his own pockets, the State contends that Stewart's request was justified because Stewart believed Bastian might be carrying a weapon.

When Stewart saw the unspent cartridge in the pickup, he had a reasonable suspicion that Bastian was armed. During an investigative detention, if an officer reasonably suspects that personal safety requires it, the officer may frisk the seized person for firearms or other dangerous weapons. K.S.A. 22-2402(2). However, Bastian had already been patted down by Ball, "a capable and competent officer," when Bastian first got out of the pickup.

Further, the pat-down frisk for weapons authorized by K.S.A. 22-2402 is not the same as a search inside a suspect's pockets. As stated in *State v. Waddell*, 14 Kan. App. 2d 129, Syl. ¶ 3, 784 P.2d 381 (1989):

"The initial frisk permitted under *Terry* and K.S.A. 22-2402 is limited to a 'patdown' search of the suspect's outer clothing to determine the existence of concealed objects which might be used as weapons. An officer may not reach directly into a suspect's pockets or outer clothing without first having conducted a patdown search, and the exclusionary rule must be applied to any evidence removed from the pockets of a suspect prior to a patdown search."

When Stewart directed Bastian to empty his pockets in anticipation of a second pat-down search, Stewart violated Bastian's Fourth Amendment rights. He had no probable cause to search Bastian's person beyond a pat-down frisk to search for weapons.

Since all the evidence used to convict Bastian on the charge of possession of methamphetamine was obtained through this illegal search, the conviction on this charge must be reversed.

*The Imposition of a Fine and Restitution*

Bastian next argues that the district court erred in imposing fines against him because it failed to comply with the Kansas Sentencing Guidelines Act by not making any specific findings that a fine was warranted and by not taking Bastian's financial resources into consideration. The State concedes that the district court failed to make the required findings. However, the State argues that Bastian failed to preserve this issue for appeal because he did not object at the time the fines were imposed.

Generally, issues not raised below cannot be raised on appeal. *State v. Rojas*, 280 Kan. 931, 932, 127 P.3d 247 (2006). However, an exception applies when a newly asserted legal theory involves only a question of law arising on proved or admitted facts and is finally determinative of the issue. *State v. Schroeder*, 279 Kan. 104, 116, 105 P.3d 1237 (2005). This exception applies here. Thus, we will consider the issue, but only those fines and fees related to the possession of drug paraphernalia conviction which has been affirmed.

K.S.A. 21-4607(3) required the court to make specific findings and to take into consideration Bastian's financial resources and the financial burden a fine would impose at the time it imposed fines against him. See *State v. Edwards*, 27 Kan. App. 2d 754, Syl. ¶ 7, 9 P.3d 568 (2000). The court imposed a $300 fine for the possession of drug paraphernalia conviction. The court did not make the requisite findings to support the $300 fine. Thus, this fine imposed on Bastian is vacated and the case is remanded for compliance with *Edwards* with respect to the imposition of a fine.

### Assessment of the BIDS Fee

Bastian argues, and the State concedes, that the district court erred in failing to consider Bastian's financial resources at the time it assessed the BIDS fees against him, as required by *State v. Robinson*, 281 Kan. 538, Syl. ¶ 1, 132 P.3d 934 (2006). However, the State argues that Bastian did not preserve the issue for appeal. Once again, the issue is one of law arising on proved or admitted facts and is finally determinative of the issue. See *Schroeder*, 279 Kan. at 116. Consequently, we can consider it.

The parties are well familiar with the ruling in *Robinson* which was announced after the district court sentenced Bastian. We must vacate the order for BIDS fees and remand the case to the district court for it to consider these financial impact issues discussed in *Robinson*. Further, the district court should take into account the effect, if any, of Bastian's conviction on only the possession of drug paraphernalia charge, since the possession of methamphetamine conviction has been reversed.

Affirmed in part; reversed in part; orders regarding one fine and reimbursement of BIDS fees vacated; and case remanded for further proceedings consistent with this opinion.