NOT DESIGNATED FOR PUBLICATION

No. 117,451

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

NORMAN VINSON CLARDY,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; MARK S. BRAUN, judge. Opinion filed December 8, 2017.
Reversed and remanded.

*Rachel L. Pickering*, assistant district attorney, *Michael F. Kagay*, district attorney, and *Derek
Schmidt*, attorney general, for appellant.

*Sonya L. Strickland*, assistant public defender, of Kansas Appellate Defender Office, for appellee.

Before PIERRON, P.J., ATCHESON, J., and WALKER, S.J.

PIERRON, J.: On May 27, 2016, Officer Robert Sachs, Sergeant Jayme Green, and
Officer Ralston were on bike patrol in the area of 7th and Taylor Street in Topeka. The
officers saw an individual, later identified as Norman Vinson Clardy, fail to stop at a stop
sign as he entered the intersection on his bicycle. The officers instructed Clardy to stop so
they could identify him and explain why they stopped him.

The officers informed Clardy that they had stopped him for failing to stop at the
stop sign. Sachs then asked Clardy for some identification, but Clardy said he did not

1

have any with him at that time. Sachs noticed "something blocky and very heavy" in Clardy's back pocket. The shape was not consistent with a weapon, but Sachs did not know what it was. He thought it might be a wallet with some type of ID in it.

Sachs said to Clardy, "You got something in your back pocket. What's that?" Clardy showed the item to Sachs, said it was a radio, and placed the item back in his pocket. Sachs realized immediately it was actually a digital scale. He told Clardy to "pull that back out." Clardy pulled the item out again and showed it to Sachs. Because they were in a high crime area where narcotics distributions took place, Sachs arrested Clardy for possession of drug paraphernalia.

After handcuffing Clardy, Sachs conducted a search. He removed the digital scale from Clardy's pocket. Sachs also found an ID. Clardy had given Sachs a name that was different from the name on the ID. Clardy told Sachs the ID belonged to his little brother. Another officer found a clear plastic bag which contained a crystal-like substance inside Clardy's hat. The officers also ran a warrants check and discovered Clardy had an active warrant.

The State charged Clardy with one count of possession of methamphetamine, a severity level 5 drug felony, one count of unlawful use of drug paraphernalia, a class B nonperson misdemeanor, and one count of failure to stop at a stop sign. Clardy filed a motion to suppress, arguing the warrantless search was unlawful. The district court held a hearing on the motion.

Sachs testified at the hearing regarding the stop and search of Clardy. According to Sachs, he arrested Clardy for "several things." Sachs first arrested Clardy for possession of drug paraphernalia and not providing an ID. Sachs said that as the interaction continued, Clardy "was then obstructing us [by] providing false information."

2

Sachs explained that Clardy was interfering because he did not have any ID and he refused to tell the officers his real name. He stated that the officers would have taken Clardy into custody in order to properly identify him even if they had not found the drug paraphernalia. He testified the officers would have conducted a search of Clardy's person, including his hat, when he was taken into custody. Sachs admitted, though, that based on the video Clardy did not appear to provide a false name until after Sachs had handcuffed him.

Sachs also testified there was an active Shawnee County warrant for forgery for Clardy when the officers stopped him. Sachs stated that even if they had not found any drug paraphernalia, the officers would have run a warrants check on Clardy. When they found out about Clardy's outstanding warrant, they would have taken him into custody and done the same search as was done in this instance.

Green testified he had known Clardy for about a year and a half through church. He testified he recognized Clardy fairly quickly after they stopped him. Even though Clardy said his name was Sanford Clardy, Green knew him to be Norman Clardy. Green testified that while bike riders do not have to have a license, they are required to provide identification when police officers stop them.

The district court ultimately granted the motion to suppress. The court found the officers had probable cause for the initial stop because Clardy had run a stop sign, but the court pointed out it was not aware of any statute that required bike riders to carry identification. The court noted that in this situation, the officers can conduct a traffic stop, and Green recognized Clardy fairly quickly. Before that happened, though, Sachs ordered Clardy to show what was in his pockets and took Clardy into custody. Because of this, the court found the search to be illegal. The court also added that a number of Clardy's statements were made in violation of *Miranda*, and it also suppressed those statements. The State appeals.

This court uses a bifurcated standard when reviewing a district court's decision on a motion to suppress. We review the district court's factual findings to determine whether substantial competent evidence supports them. In reviewing the factual findings, this court does not reweigh the evidence or assess the credibility of witnesses. We then review the ultimate legal conclusion using a de novo standard. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016).

The Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution protect against unreasonable searches and seizures. A warrantless search is per se unreasonable unless it falls within one of the exceptions to the search warrant requirement recognized in Kansas. *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014). Those exceptions include consent and search incident to lawful arrest. 299 Kan. at 239. The State bears the burden of demonstrating that a warrantless search was lawful. *State v. Cleverly*, 305 Kan. 598, 605, 385 P.3d 512 (2016).

On appeal, the State argues that Sachs and the other officers lawfully detained Clardy after he failed to stop at a stop sign. During the investigatory detention, Clardy consented to showing Sachs the digital scale in his pocket. The State contends that once Sachs saw the digital scale, he had probable cause to arrest Clardy for drug paraphernalia. Alternatively, the State claims that Sachs had probable cause to arrest Clardy for interference with law enforcement because Clardy gave a false name. The officers then discovered the narcotics during a search incident to a lawful arrest.

A review of the district court's findings and analysis of the State's argument is a multi-step process. First, the district court found the initial stop of Clardy legal because the officers had seen Clardy commit a traffic violation by running a stop sign. Clardy concedes the officers had reasonable suspicion to support the initial stop. During an investigatory detention, a law enforcement officer may request identification and use it to

run a computer records check. *State v. Walker*, 292 Kan. 1, 15-16, 251 P.3d 618 (2011) (pedestrians); *State v. Morlock*, 289 Kan. 980, 986, 218 P.3d 801 (2009) (drivers). Here, the officers were justified in asking Clardy for identification and running a warrants check.

This does not mean Sachs exceeded the scope of the stop by asking Clardy about the contents of his pocket. A defendant can voluntarily consent to a search during an investigatory detention. See, e.g., *State v. Bieker*, 35 Kan. App. 2d 427, 437, 132 P.3d 478 (2006). The State contends Sachs did not exceed the scope of the initial stop because Clardy consented to the search of his pockets. To establish valid consent, the State must prove: (1) clear and positive testimony that consent was unequivocal, specific, and freely given; and (2) the absence of duress or coercion, express or implied. *Cleverly*, 305 Kan. at 613. Factors a court may consider in determining whether a suspect consented to a search include: the presence of more than one officer, the display of a weapon, physical contact by the officer, use of a commanding tone of voice, activation of sirens or flashers, a command to halt or to approach, and an attempt to control the ability to flee. *State v. Walker*, 292 Kan. 1, 6-7, 251 P.3d 618 (2011).

Here, Clardy consented the first time he showed Sachs the digital scale in his pocket. While there were three officers at the scene, the officers were on bike patrol and did not have sirens or lights activated. The officers did not display weapons or make physical contact with Clardy before he showed them the digital scale. Sachs was talking to Clardy in a conversational tone. He did not initially demand that Clardy show him what was in his pocket, but rather he asked what was in the pocket. See *State v. Garman*, No. 90,996, 2004 WL 1489062, at *3 (Kan. App. 2004) (unpublished opinion) (finding driver consented to search where officer asked if defendant "minded emptying his pockets"). Additionally, the stop took place in the day time in a residential neighborhood.

Clardy argues Sachs' questioning itself exceeded the scope of the stop. Clardy contends the scope and duration of a traffic stop must be "strictly tied to and justified by the circumstances that rendered the initiation of the stop proper." *Cleverly*, 305 Kan. at 604. Clardy contends that asking him about the blocky item in his pocket was not tied to the purpose of the stop. Arguably, however, the question was related to the purpose of the stop. The officers stopped Clardy because he failed to stop at a stop sign. They asked him for identification, but Clardy said he did not have any. Sachs said he believed the item in Clardy's pocket might have been a wallet with an ID in it.

The first time Clardy showed Sachs the scale was consensual. The second time Clardy removed the scale from his pocket, however, he clearly did so in response to a command from Sachs. Thus, Clardy arguably did not consent to remove the scale from his pocket the second time. Even if Clardy consented to show Sachs the scale, though, Sachs did not have probable cause to believe Clardy was in possession of drug paraphernalia. Without probable cause, Sachs could not lawfully arrest Clardy. If Clardy's arrest was not lawful, then the search incident to that arrest was also unlawful.

The State has the burden to show that a warrantless arrest was not only authorized under statute, but was permissible under the Fourth Amendment. *State v. Oliver*, 280 Kan. 681, 691, 124 P.3d 493 (2005), *disapproved of on other grounds by State v. Anderson*, 287 Kan. 325, 197 P.3d 409 (2008). Under Kansas statute, an officer may arrest a person for any crime, other than a traffic infraction or a cigarette or tobacco infraction, without a warrant if the officer sees the person commit the offense. K.S.A. 22-2401(d). The officer must still have probable cause to believe that the person is committing the offense in his or her presence in order for the arrest to be constitutionally valid. *Virginia v. Moore*, 553 U.S. 164, 171, 128 S. Ct. 1598, 170 L. Ed. 2d 559 (2008).

Our Supreme Court has defined probable cause as

"'the reasonable belief that a specific crime has been or is being committed and that the defendant committed the crime. Existence of probable cause must be determined by consideration of the information and fair inferences therefrom, known to the officer at the time of the arrest. Probable cause is determined by evaluating the totality of the circumstances.'" *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 20, 290 P.3d 555 (2012).

K.S.A. 2016 Supp. 21-5701(f)(5) defines scales as drug paraphernalia. As Clardy points out, however, digital scales are not per se illegal. In other cases where probable cause of possession of drug paraphernalia was based on scales, other factors specifically linked the scale or the person in possession of it to drug distribution. For example, in *State v. Doelz*, No. 113,165, 2016 WL 3570515, at *6 (Kan. App. 2016) (unpublished opinion), the court found that an officer had probable cause to search a vehicle after seeing a digital scale in the back seat. The court noted the following factors supported a finding of probable cause:

"the presence of the closed digital scale recognized by the officer as drug paraphernalia used in drug sales; the officer's observation of the [vehicle] and its passenger speaking with a man at a known drug-complaint residence immediately before the stop; [the driver's] statement that he had stayed at the house of a known drug dealer the night before the stop; and the officer's knowledge of a passenger's admitted use of methamphetamine." 2016 WL 3570515, at *6.

In *Doelz*, the officer had information that linked the driver and passenger of the vehicle with the digital scale to drug use or known drug dealers. Here, however, Sachs only stated that Clardy was in a high crime area with complaints of illegal drug sales. Sachs did not state any information specifically linking Clardy to any such activity. The State only points to Sachs' testimony that possessing a digital scale in a high crime area provided the basis for the arrest.

7

In determining whether probable cause existed, we may also consider undisputed facts. *State v. Jones*, 300 Kan. 630, Syl. ¶ 9, 333 P.3d 886 (2014). The video evidence shows that Clardy lied and said the scale was a radio. Additionally, Clardy was carrying the scale in his pocket, which may also raise reasonable suspicions about the nature of his activity. See *State v. Overman*, 301 Kan. 704, 712, 348 P.3d 516 (2015) (noting that coffee filters are commonly known to be used to manufacture methamphetamine and are an unusual item to carry in one's pockets). Nevertheless, none of these factors directly link Clardy or the scale to the use or distribution of narcotics thereby creating a fair probability that Clardy was in possession of drug paraphernalia. Thus, there was no probable cause to arrest Clardy.

Alternatively, the State argues the officers had probable cause to arrest Clardy for interference with law enforcement. However, Sachs testified that Clardy did not appear to give a false name until after he had been arrested for drug paraphernalia. The video of the encounter is not clear that Clardy gave a false name before his arrest, either. Even assuming that Clardy committed interference with law enforcement by giving a false name, the evidence suggests he did not do so until after he had been arrested. Thus, giving a false name cannot provide probable cause for his arrest.

Because Sachs did not have probable cause to arrest Clardy, the search incident to his arrest was not lawful. This does not necessarily mean the evidence recovered in the search should be suppressed. If the prosecution can establish by a preponderance of the evidence that unlawfully obtained evidence ultimately or inevitably would have been discovered by lawful means, the evidence is admissible under the inevitable discovery rule. The burden is on the State to demonstrate ultimate admissibility, and the test is whether a preponderance of the evidence establishes that the evidence would have been inevitably discovered. *State v. Stowell*, 286 Kan. 163, 166, 182 P.3d 1214 (2008).

8

The State argues that even if the search was illegal, the officers would have inevitably discovered the methamphetamine. Even without the arrest for drug paraphernalia or interference, the officers would have done a warrant check as part of the initial stop and discovered Clardy's felony warrant. Then, the officers would have found the methamphetamine during either a search incident to lawful arrest or during a jail inventory search.

The district court did not specifically make any findings regarding the State's inevitable discovery theories. However, we may presume that the district court made all findings and conclusions necessary to support its decision if no objection was made. *Dragon v. Vanguard Industries*, 282 Kan. 349, 358, 144 P.3d 1279 (2006). Because the district court granted the motion to suppress, we may presume it rejected both of the State's arguments on inevitable discovery.

To support its argument on this point, the State relies on *Utah v. Strieff*, 579 U.S. __, 136 S. Ct. 2056, 195 L. Ed. 2d 400 (2016), in which the United States Supreme Court held that an officer's discovery of a valid, preexisting arrest warrant attenuated the connection between an unlawful investigatory stop and drug-related evidence seized from the defendant during a search incident to arrest. 136 S. Ct. at 2064. As Clardy points out, however, *Strieff* is arguably factually distinguishable. While the initial investigatory stop in *Strieff* was unlawful, the officer found contraband on the defendant after arresting him pursuant to a valid warrant. Thus, under the attenuation doctrine, the search was valid. Here, the initial stop was valid, but the search was not at that time. The officers did not discover the valid warrant until after the search. Additionally, neither party has raised an argument regarding the attenuation doctrine.

The State also argues that the contraband would have inevitably been discovered during a jail inventory search. According to the State, if Clardy was arrested on the warrant, he would have been booked into jail. Sachs testified that when Clardy was

9

booked into jail, he would have been searched, and this search would have included his hat.

The facts in this case are somewhat similar to *State v. Smith*, No. 92,836, 2005 WL 2715654 (Kan. App. 2005) (unpublished opinion). An officer stopped Smith believing he was a suspect in a domestic battery. After stopping Smith, the officer searched him and found crack cocaine in one of his pockets. The officer then did a warrants check, found out Smith had an outstanding warrant, and arrested him. The officer escorted Smith to jail, where a deputy again searched Smith.

The *Smith* court held that the officer had a reasonable suspicion to stop Smith, but the search exceeded the scope of a stop and frisk. 2005 WL 2715654, at *4-5. The court further held, however, that the crack cocaine did not need to be suppressed because it would have inevitably been discovered during the jail inventory search. 2005 WL 2715654, at *6. The court noted, "The fact that [the officer] checked for warrants after the search is irrelevant because under normal police procedure, [the officer] would have checked for warrants inevitably." 2005 WL 2715654, at *5.

Here, the officers lawfully stopped Clardy for a traffic violation. They then unlawfully arrested and searched him, confiscating the scale and methamphetamine. After the search, the officers completed a warrants check and found out Clardy had an outstanding warrant. Sachs testified they would have run the warrants check even if they had not seen the drug paraphernalia. Sachs added they would have taken Clardy into custody on the warrant and searched him. In its ruling, the court also noted that Green recognized Clardy fairly quickly, and the officers would have been able to check his identification as part of the stop. Thus, the evidence supports a finding that the contraband would have inevitably been discovered during a jail inventory search.

One notable difference between this case and *Smith* is the officer testimony regarding the jail inventory search. In *Smith*, the officer testified that he took Smith to the jail where a deputy searched Smith, including his pockets. The officer said he had transported people to jail over 500 times and the jail always followed the same procedure. Here, Sachs did not testify about Clardy's actual jail search. He only testified that when Clardy was taken into custody, he would have been searched in the same manner as he was at the scene, including his hat.

Sachs' testimony is important because the State must demonstrate by a preponderance of the evidence that the methamphetamine would have eventually been discovered by other lawful means. See, e.g., *Stowell*, 286 Kan. at 168 (finding the State had failed to carry burden because it did not present any evidence that the defendant would have been booked into jail or any evidence of jail search procedures). In *State v. Ingram*, 279 Kan. 745, 753, 113 P.3d 228 (2005), an officer testified that people are searched for contraband or weapons before being allowed into the secure area of the law enforcement center as part of procedure, and this search includes the person's pockets, shoes, and coat. The court found this was sufficient to show the evidence would have been inevitably discovered. Based on *Ingram*, Sachs' testimony was likely enough to meet the State's evidentiary burden, because he specifically testified Clardy's hat would have been searched as part of procedure when he was taken into custody.

Clardy's only counter argument is that "[b]ut for the illegal search of his person and the discovery of the methamphetamine, it is sheerly speculative to say the existence of the warrant would have even been discovered." He does not elaborate on this argument. He states in his brief, however, that Green was able to identify him almost immediately, and that officers could run a computer check as part of the stop. Furthermore, at the hearing, Clardy's counsel argued, "I suppose if [Clardy] would have maintained that he didn't have any identification, Officer Green knew who he was and it was going to be discovered that he had a warrant, but all of that comes after the

11

constitutional violation." The *Smith* court noted that the timing was not relevant because the officers would have checked for warrants as part of their normal procedure. 2005 WL 2715654, at *5.

In summary, the district court erred in granting Clardy's motion to suppress. Clardy arguably consented to the search of his pockets, but the officers did not have probable cause to believe he was in possession of drug paraphernalia. Because of this, his arrest was not lawful nor was the subsequent search. The evidence in this case should not be suppressed, though. Even if the officers had not arrested Clardy for drug paraphernalia, they would have run a warrant check as part of the initial stop and discovered Clardy had an outstanding warrant. The officers would have then arrested Clardy on the warrant, and he would have been subject to a jail inventory search, which would have uncovered any contraband.

Reversed and remanded for further proceedings consistent with this opinion.